Dickerson *v.* Seelye.

## Dickerson *vs.* Seelye.

Though as between the shipper of goods and the owner of the vessel, a bill of lading may be explained as to quantity and condition of the goods, yet it may not be so explained as between the owner of the vessel and a consignee or assignee of the bill of lading, who has in good faith advanced money on the strength of it, and has thus been led by the master's signing the bill to an act changing the situation of the parties. In such case the bill of lading is conclusive on the owner, in respect to the quantity of goods.

Error to the New-York common pleas. The two first counts of the plaintiff's declaration were general, for freight of divers goods, merchandise, chattels and coal, claiming $300. The declaration also contained the common counts for work and materials, goods sold and delivered; a general money count, and an account stated. The defendant pleaded the general issue, and a tender of $85,40. To the pleas the defendant subjoined a notice that on the trial he would insist and give in evidence by way of deduction, abatement and recoupment from any damages the plaintiff might prove or be entitled to recover as damages, under the declaration, (except the amount of eighty-five dollars and forty cents, parcel, &c. tendered and paid into court as aforesaid,) that the said plaintiff, on the fourth day of June, 1847, undertook, and faithfully promised to deliver

to the defendant seventy tons of coal, in good order, at the port of New-York, he the defendant paying freight for the same at the rate of one dollar and thirty cents per ton, with average accustomed. And that although the defendant was ready and willing to pay the freight as aforesaid, the plaintiff did not deliver seventy tons of coal in good order, but on the contrary thereof he did not, nor would at any time, although often requested so to do, deliver more than a part thereof, to wit, sixty tons of said coal, and that to deliver the remaining part, to wit, ten tons of said coal, the plaintiff wholly refused and neglected, to the great damage of the defendant, to wit, to his damage of fifty dollars ; and that the defendant would further prove and show on the trial, that the promise and undertaking mentioned in such notice was a part of the same identical contract and agreement mentioned in the first and second counts of the declaration.

the trial the plaintiff gave in evidence a bill of lading of 70½0 tons of coal from Philadelphia to New-York, at $1,30, signed by the plaintiff, and dated June 4, 1847. The plaintiff also proved that the vessel named in the bill of lading, of which the plaintiff was owner and master, took in a cargo of coal at Philadelphia in June 1847, and brought the same to New-York, and delivered the same to the defendant, without any material loss or wastage on the passage. The defendant proved that on the delivery of the coal at his yard in New-York, there was a deficiency of one ton and 2090 lbs.

A clerk of the defendant testified, that the defendant on the completion of the delivery of the coal to the defendant tendered to the plaintiff in gold and silver coin, the sum of eighty-five dollars and forty cents. The defendant required in making such tender, a deduction and allowance from the plaintiff, for the cost price of the deficiency between the amount of coal delivered as weighed at the defendant's yard, and the amount as stated in the bill of lading, allowing 1200 pounds for wastage, which deduction was $3, and freight on the deficiency. And the defendant paid the sum of eighty-five dollars and forty cents into court at the time of pleading, by a rule properly entered for

Dickerson v. Seelye.

the purpose, and the plaintiff drew the same out of court. It was also admitted, that the defendant paid the consignors for seventy tons, according to the bill of lading, on the receipt of the same from Philadelphia. And it was proved to be usual to pay by the bill of lading, before the coal arrives. The defendant's clerk further testified, that the defendant offered to pay the captain freight on all the coal received, and claimed to deduct from the amount the cost price of the deficiency in the quantity of coal delivered, as compared with the bill of lading, allowing about 1200 pounds for waste. The plaintiff then called a witness, who testified that he, at the request of the plaintiff, and as his agent, called on the defendant some time after the delivery of the coal, to demand and collect the amount due the plaintiff for freight of said cargo, that he presented the defendant with the bill for the freight and asked him if he would pay it; defendant said yes, if he would accept of the same proposition he, the defendant, had offered the plaintiff; witness asked what that was; the defendant said that he wanted the plaintiff to deduct the freight of all the coal not actually delivered, and also the cost price of the deficiency between the amount as weighed, according to the defendant's register, and the amount as stated in the bill of lading. Witness then asked him if that was the best he would do, and the defendant said yes. The evidence being closed, the defendant, by his counsel, insisted that the bill of lading formed a contract between the plaintiff and the defendant, and that he was bound to deliver the coal as specified in the bill of lading, and insisted that a deduction should be made, by way of a recoupment, of the value of the coal deficient in quantity to make the whole seventy tons, and that the tender was *sufficient*. And also, that as the defendant had paid the consignor by the bill of lading, the plaintiff should be bound by his acknowledgment in the bill of lading. The counsel for the plaintiff contended, that the captain was in no way liable for the delivery of any more than the coal put on board; and if that was less than the bill of lading called for, the master or owner of the vessel was not liable to the defendant.

The court decided that the carrier has no right to recover any

more freight than for the quantity he delivers.   That the plaintiff was not liable for a deficiency in˙ the quantity, if such deficiency was occasioned by an error in delivering the coal on board. To the foregoing clause the counsel for the defendant excepted —" or by anything that occurred after the coal was delivered to the defendant's cartmen."   The court also decided that a bill of freight partakes of the nature of a receipt and of a contract; that so far as refers to the quantity, quality, and condition of the goods, it is a receipt, and open to explanation by parol testimony.   To this opinion the counsel for the defendant excepted —"So far as it relates to the carrying and delivering of the property, it is a contract and not open to explanation."   Applyplying these rules, the plaintiff was held entitled to recover $88,48 in all, from which was deducted the amount tendered and received by plaintiff out of court, $85,40.   And judgment was rendered for the plaintiff, for $3,08.

*H. Brewster*, for the plaintiff in error.

*E. L. Fancher*, for the defendant in error.

*By the Court*, EDMONDS, P. J.   As between the shipper of the goods and the owner of the vessel, a bill of lading may be explained, so far as it is a receipt, that is as to the quantity of goods shipped and their condition and the like ; but as between the owner of the vessel and an assignee for a valuable consideration paid on the strength of the bill of lading, it may not be explained.   (*Portland Bank* v. *Stubbs*, 6 *Mass. R.* 422.  *Abbott on Shipping*, 323-4.)   *Bradstreet* v. *Lees*, *M. S. U. S. District Court*.)   In such case the superior equity is with the bona fide assignee, who has parted with his money on the strength of the bill of lading.

Such is the case now before us.   The defendant below purchased and paid for the cargo of coal by the bill of lading, and not otherwise.   By the act of the master, in signing that bill, he was induced to part with his money, and it would be against

well established principles, now to allow the owner to vary the contract.   He ought to be estopped from so doing.(*a*)

The judgment below.ought to be reversed.

Judgment reversed.

[NEW-YORK GENERAL TERM, October, 1851.   *Edwards, Mitchell* and *King*, Justices.]

(*a*) See *Phelps* v. *Williamson and Bishop*, (10 *N. Y. Leg. Obs.* 272,) where it was decided by the superior court of the city of New-York, that under a bill of lading in the usual form, the conveyance and delivery of the goods is a condition precedent to the right of the ship owner, or master, to the payment of the freight; and that freight paid in advance, if the goods have not been carried and delivered according to the bill of lading, may in *all* cases be recovered back, unless there is a special agreement to the contrary.