Louisiana National Bank of New Orleans, v. Laveille, et al.

———o———

Louisiana National Bank of New Orleans, Appellant, *vs.*, Theodore Laveille, *et al.*, Respondents.

·1. *Common Carriers—Liability—Bills of lading—Goods not received—Third parties.*—The owners of a boat are not rendered liable at the suit of a third party in consequence of a bill of lading having been issued for goods as shipped on board that boat by one apparently having authority therefor, to the consignor named in said bill of lading, who negotiated a bill of exchange drawn on the consignee to such third party, who purchases and has indorsed to him for value the bill of exchange on the faith and on the security of the bill of lading which is also transferred to him, without any knowledge or notice of lack of authority on the part of him who signed the bill of lading, or that the goods recited in the bill of lading were never shipped.

*Appeal from St. Louis Circuit Court.*

*Sharp & Broadhead*, for Appellant.

I. If Sinnoth and Adams were held out as agents to give bills of lading *generally* for the boat, and acted as such, and made the bill of lading, and plaintiffs purchased it innocently,—then although there were restrictions, in the instructions to them or in their authority, as between them and their principals, and they violated it; yet if plaintiff knew nothing of such

limitation or of its violation—he is not affected thereby.—The principals must account to plaintiff, and look to their agent for redress. (Story on Agency, § 126,–127 *et seq.*,)

II. The defendants (by agent) having made, delivered and put in circulation, the bill of lading, it being purchased or advanced upon by an innocent third person, as to him they are concluded thereby, by their statement therein, that the goods had in fact been all shipped on board the vessel. (Dickerson vs. Seelye, 12 Barbour Sup. Ct. Reps., 99 ; Howard vs. Tucker, 1 Barnwell & Ad., 712, &c.; Strong vs. Grand Trunk Railway Co., 6 American Law Register, (N. S.) 680–681, &c. ; Meyer vs. Peck, 28 N. Y., 590–597, &c.; See pp. 598–9 ; 1 Parsons on Maritime Law, 135–136–137, and note 2 at p. 137.)

*Glover & Shepley,* for Respondents.

If the master had signed this bill of lading, the property not being actually on board, no liability attaches to the owners, either to the consignee or to his assignee for value. (Goodrich vs. Norris, 1 Abbott Adm., 200 ; Mortell vs. Ship W. H. Rutan, Rose, Master ; Int. Rev. Record Vol. I, p. 125 ; Grant vs. Norway, 2 Eng. Law & Equity, 337 ; Schooner Freeman vs. Buckingham, 18 How. U. S., 182 ; 1 Parson's Marit. Law, 135 and n. 2 ; Herbbersty vs. Ward, 8 Exch., 330 ; Jessell vs. Bath, 2 Law Rep. (Exch.,) 267.)

The agent has no higher authority than the master and cannot bind owners where goods are not on board. (Gessel vs. Barth, 2 Law Rep. Exch., 267 ; per Chief Baron Kelley and Baron Bramwell.)

SHERWOOD, Judge, delivered the opinion of the court.

Action in the St. Louis Circuit Court, brought by the Louisiana National Bank against Theodore Laveille and others.

The petition in substance states that defendants were the owners of the steamboat Mississippi, and common carriers, engaged as such in carrying on said boat, property, merchandise, &c. between the port of New Orleans and that of St. Louis ; that

the defendants had their officers, agents, and employees, engaged in their said business at New Orleans, &c.; that on the 8th day of February, 1870, at said last mentioned port, and while said boat was at the same, defendants by their authorized agents executed and delivered to A. C. Wilbur & Co., a certain bill of lading of that date, in which was acknowledged the shipment by said Wilbur & Co., on said boat of eighty-nine drums of caustic soda in good order and condition marked "L. N. & Co.," consigned to the order of said Wilbur & Co., that by said bill of lading it was also agreed, that said caustic soda should, dangers of navigation &c., excepted, be delivered in like good order to the consignee at St. Louis; that the said agents were duly authorized to execute and deliver bills of lading at New Orleans in behalf of said defendants, and of the said boat; that thereupon said Wilbur & Co., with said bill of lading in their possession on the same day made their certain bill of exchange of that date at New Orleans directed to Lewis, Nanson & Co., at St. Louis, a mercantile firm at that place, and requested and ordered said drawees at ten days sight to pay to the order of said makers $2,400; that said Wilbur & Co., sold and transferred by written indorsement and assignment said bill of exchange and said bill of lading thereto attached, to plaintiff, who took and purchased the same on the faith and security of said bill of lading, and in due time caused said bill of exchange to be presented at St. Louis to said drawees for acceptance, which was refused; said bill of exchange was duly protested and notification thereof given to said Wilbur & Co., and afterwards, at the proper time, said bill of exchange was duly presented to said drawees at St. Louis for payment, payment demanded, payment refused, and protest made for such refusal, and due notice given to Wilbur & Co.; that when the boat reached St. Louis plaintiff presented the bill of lading to said defendants and proper agents on said boat, demanded the delivery of the eighty-nine drums of caustic soda, but defendant only delivered five of said drums, and failed, and refused to deliver the residue; that said five drums were only worth

$146.27, that being the amount plaintiff received therefor, but that the eighty-four drums, which defendants failed and refused to deliver, were worth $2,456, that the same were not lost, nor their delivery to plaintiff prevented, by the danger, of navigation, &c., but only by the negligence and mismanagement of defendants their agents and employees; that no part of the bill of exchange, except the sum for which the five drums of caustic sold, had ever been paid on the bill of exchange; that Wilbur & Co., had become and were insolvent; that by reason of the premises and of defendants refusal to deliver said eighty-four drums of caustic soda, and of the negligence and mismanagement of defendants, their agents and employees, plaintiff was damaged in the sum of $2,500, for which judgment was asked. The bill of lading referred to in the petition was signed, "per Sinnoth & Adams, agents-Jos. Cooper"

The defendants answered, denying, that they had any agents in New Orleans or elsewhere, except the officers of the boat, denied the execution and delivery by themselves or agents of the bill of lading to Wilbur & Co., and that it was ever agreed that the eighty-nine drums of caustic soda should be delivered at St. Louis; averred they had no knowledge &c., as to the acts of Wilbur & Co., or of plaintiff, respecting the alleged bill of lading, and the alleged bill of exchange; admitted the reception on their boat Mississippi, from Wilbur & Co., of five drums of caustic soda and their delivery to plaintiffs, but denied the reception on board the said boat of any more drums of caustic soda than the said five, which was the reason averred for the non-delivery of a greater number; denied that the eighty-four drums of caustic soda ever came on board the boat or into the custody of defendants their servants or agents, denied all mismanagement, negligence, liability, &c.

A jury was impanelled to try the cause, and testimony was introduced tending to show that the bill of exchange mentioned in plaintiff's petition was negotiated and purchased by the plaintiff from Wilbur & Co., through their broker, Fazened, in the usual course of business for full value and on the faith of

the bill of lading thereto attached; that Sinnoth & Adams were the agents of the boat Mississippi at New Orleans at the time the bill of lading bears date, that only five drums of caustic soda of same marks destination and consignees as those mentioned in plaintiffs petition ever were received on board the boat; that Sinnoth & Adams had power to sign bills of lading for the steamer Mississippi on the production of dray receipts, *i. e.* receipts signed by the receiving clerk of the boat, acknowledging the delivery of the goods therein specified; that James Cooper the clerk of Sinnoth & Adams signed bills of lading for them, and had authority *from that firm* so to do, but only when dray tickets were produced; but that he had no authority whatever to sign the bill of lading in question; nor was there any evidence tending to show that fact, or that dray tickets were produced at the time of signing the bill of lading, nor that the eighty-four drums of caustic soda ever were received on board the boat.

Plaintiff, after the above testimony was in, offered in evidence the bill of lading and the indorsement of Wilbur & Co., thereon, which on being objected to by defendants was excluded by the Court, and plaintiff excepted.

Plaintiff then asked several instructions, looking to a recovery on the facts as proven, which instructions the Court refused to give, and plaintiff excepted.

The Court at the instance of defendants gave such instructions as precluded a verdict for plaintiff; whereupon plaintiff excepted, took a non-suit with leave, &c., and after moving unsuccessfully to set aside the non-suit, and again excepting, this cause comes here by appeal.

The decision in this case will be an answer to this question:

Are the owners of a boat rendered liable at the suit of a third party, in consequence of a bill of lading having been issued for goods as shipped on board that boat by one apparently having authority therefor to the consignor named in such bill of lading, who negotiates a bill of exchange drawn on the consignee to such third party, who purchases, and has indorsed to him for value the bill of exchange, on the faith and

on the security of the bill of lading, which is also transferred to him, without any knowledge or notice of lack of authority on the part of him, who signed the bill of lading, or that the goods recited in the bill of lading were never shipped?

A brief examination of the authorities cited by both appellant and respondents having any special reference to the point in hand will therefore be made.

Justice Curtis in Schooner Freeman vs. Buckingham, *et al.*, 18 How. (U. S.,) 182, says:

" If the signer of a bill of lading was not the master of a vessel, no one would suppose the vessel bound; and the reason is, because the bill is signed by one *not in privity* with the *owner*. But the same reason applies to a signature of a *master* made out of the course of his employment. The *taker assumes the risk* not only of the genuineness of the signature and of the fact that the signer was master of the vessel, but also of the apparent authority of the master to issue the bill of lading. * * * But the master of a vessel has no more apparent unlimited authority to sign bills of lading, than he has to sign bills of sale of the ship. He has an apparent authority if the ship be a general one, to sign bills of lading *for cargo actually* shipped, and he has also authority to sign a bill of sale of the ship, when in case of disaster his power of Sale arises. But the authority in each case arises out of, and depends upon a particular state of facts.

It is not an unlimited authority in the one case more than in the other, and his act in either case does not bind the owner, even in favor of an *innocent purchaser*, if the facts upon which his power depended did not exist; and it is incumbent on those, who are about to change their condition upon the faith of his authority, to ascertain the existence of all the facts upon which his authority depends."

To the same effect are Grant, *et al.* vs. Norway, *et al.*, 2 Eng. Law and Eq., 337; Hubbersty, *et al.* vs. Ward, 8 Exch., 330; Francis T. Montell, *et al.*, vs. The Schooner William H. Rutan, and Chas. C. Rose, her master; (Reported in Intern. Rev.

Rec., Vol. I, p. 125.) Parsons, Mart. L., Vol. I, p. 135, and note 2.

All these were cases where proceedings were instituted by *third* parties, (to whom the bills of lading had been assigned or who had made advances thereon for value on the faith and security of those bills,) against the vessel, as libellants, or against the owners for damages arising from the total or partial non-delivery of goods mentioned in the bills of lading.

In Montell vs. The Schooner William H. Rutan, *supra*, (in which case are cited, 18 How. (U. S.,) 182; 19 do 82; 2 Eng. L. and Eq., 337; 29 *Ib.*, 323,) it is said:

"That a cardinal restriction which applies to this case is, that a master cannot subject a ship *in rem.*, much less his co-owners, to a responsibility for a safe carriage or delivery of cargo NOT ACTUALLY *laden on board* of it for transportation, in the lawful employment of the vessel. This principle is too firmly rooted in the doctrines of commercial jurisprudence to be subject to question in this country or in England.

"That as the libellants prove by the testimony of the master himself, that he executed the bill of lading with knowledge that the wheat was not on board at the time, the bill of lading was *nugatory and fraudulent* as to the vessel and all her co-owners, except the master himself."

The case of Strong vs. G. T. R. W. Co. 6 Am. L. Reg., 680 was a suit between the owners of a vessel and an intermediate consignee to test the right to deduct the value of a "shortage" in the cargo, and the point under discussion was only incidentally alluded to, and the allusion was therefore a mere *obiter dictum*.

Dickerson vs. Seelye, 12 Barb., 99, was an action brought for freight by the plaintiff, who *himself* being the *owner* and *master*, had signed the bill of lading, and it was held that defendant, a purchaser in good faith of that bill, might on the trial, by way of diminishing the amount of plaintiff's recovery, show that the amount of coal called for in the bill had not been delivered.

Meyer vs. Peck, 28 N. Y., 590, was the suit of the assignee

of a claim for freight against the *shipper*, and the point now being considered was not in the case, but merely received a passing notice. It seems also that the *captain* of the canal boat was its *owner ;* that the claim for freight was due *to him*, and that he was the assignor of that claim.

Howard, *et al.* vs. Tucker, *et al.*, 1 Barnw. and Adolph, 712, was only a contest between parties (one of whom was an assignee for value of a bill of lading, which recited that the freight had been paid,) respecting the right of defendants to retain money to reimburse themselves for money paid for that freight against the express directions of their principals, and when the bill of lading recited payment of the amount due for freight.

It will thus be seen from the above cited authorities, that the interrogatory propounded at the outset must meet with a reply in the negative.

It is a well settled maxim in Admiralty Jurisprudence, that "Freight is the mother of wages," and under the circumstances detailed in evidence here, so far as charging the owners of the boat is concerned, the actual delivery of the goods on board occupies towards the bill of lading for those goods the same maternal relation.

It would seem that there is an element of hardship in this case, but it is a hardship, which could readily have been avoided had those precautionary measures and inquiries, (which the law enjoins upon those about to purchase these *quasi* negotiable instruments or bills of exchange secured thereby,) been pursued.

For these reasons the action of the court below was undoubtedly correct, and its judgment will be affirmed.

Judge Wagner absent, the other Judges concur.