Smith v. Mo. Pac. R'y Co.

G. W. Smith, Respondent, v. Missouri Pacific
Railway Company, Appellant.

Kansas City Court of Appeals, January 14, 1895.*

1. **Bills and Notes:** BILLS OF LADING: PRINCIPAL AND AGENT: CAR-
RIERS. Regarding the validity of bills of lading issued by agents of
common carriers in the hands of innocent third parties where the
goods in fact are not delivered to the carrier, two doctrines prevail:
(1) That the carrier is not liable since the receipt of the goods alone
confers the power on the agent to issue the bill. (2) That the
carrier is liable for such bills since the knowledge of whether the
goods had been received and the power in fact conferred lies pecu-
liarly with the agent.

2. ———: ———: ———: ———: ESTOPPEL: CORPORATION. Where
the carrier himself issues such bill of lading it is valid in the hands
of innocent third parties though the goods were not in fact received
by the carrier and he is estopped to deny the non-receipt; and where
the general agent of a corporation, who is in fact the corporation,
issues such bill, the corporation is estopped.

3. ———: ———: SUBSEQUENT RECEIPT OF GOODS: JUDGMENT IN
REPLEVIN. The fact that the goods were subsequently delivered to
the carrier for other parties who recovered them by a judgment in
replevin will not defeat an action for damages against the corpora-
tion for issuing a bill to plaintiff's indorser before the receipt of the
goods.

*Appeal from the Jackson Circuit Court.*—Hon. J. H.
Slover, Judge.

AFFIRMED AND CERTIFIED TO THE SUPREME COURT.

Elijah Robinson for appellant.

(1) The local agent of a common carrier has no
authority to bind the carrier by the issue of the bill of

*This case reached the reporter May 16, 1898.

lading when the property is not in the possession of the carrier. Bank v. Laveille, 52 Mo. 380; Schooner Freeman, 18 How. 182; Grant v. Norway, 2 Eng. Law and Eq. 337; Hubbersty v. Ward, 8 Exch. 330; 1 Parsons, Mart. Law, 135; R'y v. Knight, 122 U. S. 86, 87; Pollard v. Vinton, 105 U. S. 7; R. R. v. Wilkins, 44 Md. 11; Miller v. R. R., 90 N. Y. 430; Lady Franklin, 8 Wall. 328; Block v. R'y, 92 N. C. 42; 2 Daniel on Neg. Inst., sec. 1733. (2) Although defendant did not have possession of the grain in controversy at the time the bills of lading were signed and delivered by Huffsmith, the clerk in the commercial office, said grain did subsequently come into its possession, but it has a sufficient and legal excuse for not having delivered the same according to the terms of the bills of lading. The property was taken out of its possession by legal process. 2 Beach on Railways, sec. 931. A common carrier is excused from the delivery of goods when they have been seized under legal process. It makes no difference by and against whom the process is issued. When the goods are seized they are in the custody of the law and no one has a right to question it. Wakey v. R'y, 35 Mo. App. 85; Hutchinson on Carriers, sec. 398.

W. C. SCARRITT for respondent.

(1) The decision in the case of Bank v. Laveille, 52 Mo. 380, should not be held to override this statute. Mr. Daniel speaks of the distinction between agents of vessels and railroad companies. Sec. 1733a. And this doctrine is supported by the authorities. Amour v. R. R., 65 N. Y. 111; Bank v. R. R., 106 N. Y. 195; s. c., 60 Am. Rep. 440; R. R. v. Bank, 10 Neb. 553; Bank v. R. R., 20 Kan. 519; R. R. v. Larned, 103 Ill.

293. (2) The evidence adduced in this cause warranted the jury in finding that the bills of lading in controversy were issued by an agent of the defendant authorized thereto. Lord v. Bigelow, 124 Mass. 186; 1 Greenl. on Ev., sec. 527a; Clementine v. State, 14 Mo. 112; Voegeli v. Marble & Granite Co., 49 Mo. App. 646; White v. R'y, 19 Mo. App. 409. (3) The fact that the merchandise was taken from defendant by legal process is no defense to this action.

ELLISON, J.—The present action is for damages in which plaintiff had judgment below.

It appears from the evidence that defendant's agents at Kansas City on two occasions issued to one

STATEMENT.      Nathan, at Kansas City, a bill of lading for a car load of grain whereby it was stated in each that defendant had received said grain to be transported "to Memphis, Tennessee, and delivered to the consignees or a connecting common carrier." In neither instance, at the issuance of the bill of lading was the grain actually shipped and on board the cars of defendant, as it is provided it shall be by sections 743 and 746, Revised Statutes 1889. It was shown in evidence that plaintiff purchased the bill of lading of Nathan for a valuable consideration. That the grain aforesaid was never shipped by defendant but was the property of other parties than Nathan or defendant, to wit: the property of Hall & Robinson, to whom defendant had theretofore issued bills of lading, who appropriated the same to their own use.

Plaintiff's action is based on the sections of the statute aforesaid, he claiming damages thereunder for the injury done him by the alleged wrongful act of defendants in issuing the bill of lading without having the grain shipped aboard the cars. There was evidence

tending to show that plaintiff purchased the bill in reliance upon its face.

There is much authority, and that too from high sources, holding that a general agent has no authority to bind a carrier for the transportation of goods—no authority to issue a bill of lading unless the goods have been actually received for transportation. And in such case that though the bill of lading be in the hands of an innocent purchaser for value he can not hold the carrier. 2 Daniel Neg. Inst., sec. 1733; Pollard v. Vinton, 105 U. S. 7; Schooner Freeman v. Buckingham, 18 How. 190. It has been so held in a case in this state directly involving this question. Bank v. Laveille, 52 Mo. 380. It is likewise the rule in the great commercial country of England. Grant v. Norway, 10 C. B. 665; Hubbersty v. Ward, 18 Eng. Law and Eq. 551; Coleman v. Riches, 29 Ib. 323; Cox v. Bruce, 18 Q. B. 147. In Pollard v. Vinton, *supra,* Judge Miller says: "The receipt of the goods lies at the foundation of the contract to carry and deliver." * * * "Before the power to make and deliver a bill of lading could arise, some person must have shipped goods on the vessel." * * * "They (the agents) had no power to sell bills of lading. They had no power to execute these instruments and go out and sell them to purchasers."

*Margin note: BILLS and notes: bills of lading: principal and agent: carriers.*

The foregoing cases relate to masters of vessels; but it has been held to apply, with even more force, to bills issued by freight agents for railroad companies—such agents having, generally, less power than the masters of vessels. R'y v. Wilkins, 44 Md. 23, 26; R'y v. Knight, 122 U. S. 87.

The ground upon which these decisions rest is not only that the masters of vessels and freight agents of railway companies have no authority to bind their

principals but that the commercial public *well know* that their authority to issue a bill of lading depends upon the precedent fact of a receipt of the freight. If this be true, it affords ground for formidable argument against the ground of estoppel asserted against the principal in those cases which refuse to follow the cases we have cited. . It must be conceded to be one of the fundamental principles of agency that when one knows an agent's authority to be limited as it relates to a certain act, that person must ascertain for himself whether the limitation has been transgressed. Thus, suppose one knows that a general agent with whom he is about to deal has no right to represent his principal, in the particular transaction, unless he be authorized in writing. Would not such person be bound to ascertain whether such authority existed? And he could not be permitted to rely upon the agent's statement that such written authority had been given. So, if it be known to the business public that a railway freight agent or the master of a vessel has no authority to issue a bill of lading for freight not received, or, in other words, has no authority except for freight actually received, it would seem to be logically clear that persons thus having such knowledge must ascertain the fact, or deal with such an agent at their hazard.

2. Notwithstanding the high character of the courts, including as before stated our own supreme court, which have so decided the question, there are a number of adjudications to the contrary. These cases do not expressly disapprove of the reasoning found in the cases which we have cited, but the jurists who have taken the opposing view find a theory upon which to base their conclusions, which, when stated in its full breadth, is that at this day in the light of commercial usage, railway companies must be held to

know, what is known to all business men, that bills of lading have now become one of the common means of commercial exchange and upon which advances are made to shippers or their assigns, that the money thus advanced to the shipper is by him frequently used, especially in grain and live stock, to pay the producer. That such bills of lading for most all classes of freight are commonly used in commercial exchange for the convenience and security of modern commerce. With this knowledge of the use made of such bills, which has grown with the general growth of commerce, a railway company employs agents for the purpose of receiving freight for shipment. *But it also employs him for the further purpose of stating, in the form of a bill of lading, the receipt of such freight.* He being therefore placed in a position by the railway company to enable him to make a statement which is put in a form for the *purpose* of reaching, and whereby it *may reach, innocent parties.* A statement, too, which lies wholly and peculiarly within his knowledge; it would seem that persons in .commercial business ought to safely rely upon a statement thus made and that if they do so rely upon it and alter their position on account thereof, the railway company should not be permitted to deny the receipt of the freight as stated in the bill. These views are supported by the following, among other authorities. Bank v. R'y, 106 N. Y. 195; Armour v. R'y, 65 N. Y. 111; Griswold v. Haven, 25 N. Y. 595; Brooke v. R'y, 108 Pa. St. 529; Bank v. R'y, 20 Kan. 519; R'y v. Bank, 10 Neb. 556; R'y v. Larned, 103 Ill. 293. In the first of these cases the supreme court of New York regarded it as the settled "law of agency that where the principal has clothed his agent with power to do an act upon the existence of some extrinsic fact necessarily and peculiarly within the knowledge of the agent, and of the existence of which the act of

executing the power is itself a representation, a third person dealing with such agent in entire good faith pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying the truth to his prejudice." This is upon 'the doctrine of estoppel *in pais*.

In cases like the one in hand the agent has the power to issue a bill of lading when the goods are actually received for shipment. The extrinsic fact of the receipt of goods by him is the authority upon which his power depends. The knowledge whether the goods have been received by him, and thus the power conferred lies peculiarly with him. His representation as to the existence of this important fact ought to bind the principal for the simple reason, if nothing more, that the principal has placed him in his agency for the purpose of making a representation as to this fact. The principal knows too, that bills of lading fall into the hands of innocent parties in the course of daily commercial transactions at a great distance from the place of shipment who, while knowing that they should only be issued on receipt of the goods, yet must necessarily depend upon the statement of the agent therein, who has knowledge of the fact as to such receipt. The principal may be innocent. The purchaser of the bill of lading relying upon its statement of the receipt of the goods certainly is. So, therefore, "whenever one of two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it."

We, however, deem it proper to say that if the necessities of this case required us to adopt either of the foregoing views we should feel compelled to follow (though, we concede, unwillingly) the view set forth in the first division of this opinion, for the reason that it

is supported by the only enunciation we have from our supreme court on that question.

In Bank v. Laveille, 52 Mo. 380, referred to above, attention was not directed to the view of the case which we have last discussed. Nor was our statute, sections 744, 745, regarding the negotiability of such bills referred to. We need not here undertake to construe those sections, neither need we say what attributes, if any, which belong to bills of exchange and promissory notes as commercial paper, attach by reason of this statute to a bill of lading. We have entered upon an examination of the two antagonistic holdings on this important question in order that we might ascertain the reasons upon which they are respectively based, to the end that we may arrive at a satisfactory disposition of the case at bar under the facts surrounding it, especially as those facts relate to the corporation defendant.

The true law of agency may be with either of the theories developed and stated herein, but as to a further branch of the question which is disassociated from agency, and which we think controls this case, there can be no difference of opinion. That is, where the carrier

estoppel: corporation.

himself issues the bill of lading, he will not be permitted to say, to the prejudice of an innocent holder, that he never received the freight. To permit him to do this would be to violate every principle of estoppel and would be offering a premium for wrong doing. Thus if the master of a vessel, being also the *owner*, issue a bill of lading without having the goods on board he is estopped to deny the receipt which he has stated in the bill. This principle is recognized more or less directly in Bank v. Laveille, 52 Mo. 380; Freeman v. Buckingham, 18 How. 188, 189; Ellis v. Willard, 5 Seld. 529; The Delaware, 14 Wall. 601; The Lady Franklin, 8

Wall. 325; Relyea v. R. R., 42 Conn. 579; Dickerson v. Seelye, 12 Barb. 99.

Now we consider the act of defendant's general agent here as the act of the defendant corporation *itself*. A corporation has agents; indeed, from its composition, can only act through agents. These agents are frequently such in the ordinary acceptation of the word; they are also frequently *ex necessitate rei*, the corporation itself. McGinnis v. R'y, 21 Mo. App. 408. Mr. Street was the general commercial agent of defendant, in charge of a vast amount of territory over which, and from which, the defendant drew freight. He was in charge and had supervisory control of the defendant's business in this respect. He was *pro hac vice*, the defendant itself. Such we believe was the opinion of the supreme court of the United States as expressed in Pollard v. Vinton, 105 U. S. 7, though that case did not involve this point. This view is in keeping with the evident intent and object of the statute which contemplates that such irregular bills of lading may be issued by corporations through their agents and its object is to give a remedy to him who may be injured thereby.

We have not considered as of any force the point made by defendant that the grain was in fact afterward delivered to it, but was then taken from it by a judgment in replevin, of all of which plaintiff had notice, from the fact that when defendant did afterward receive the grain it did not receive it from or for Nathan or this plaintiff. It received it from and for the plaintiffs in the replevin suit and had theretofore issued to those plaintiffs bills of lading therefor. If the grain was taken from defendant by process of law it was on account of the wrongful act or double dealing (though perhaps inadvertent) of its own freight agents.

——: ——: subsequent receipt of goods: judgment in replevin.

Smith v. Mo. Pac. R'y Co.

The result is that we affirm the judgment.   GILL, J., concurs, SMITH, P. J., not sitting.

GILL, J. (*concurring.*)—While concurring in the foregoing opinion of Judge Ellison, I yet feel doubtful as to whether or not the conclusion reached can be harmonized with Bank v. Laveille, 52 Mo. 380.  In order, then, that a question so important to our commercial interests may be settled in this state, I have concluded to ask that the case be certified to the supreme court.