# WILLIAM LINDHORST et al., Appellants, v. ST. LOUIS PROTESTANT ORPHAN ASYLUM.

### Division One, November 30, 1910.

1. **EXCLUDING EVIDENCE IN EQUITY CASE.** In an equitable proceeding evidence excluded by the chancellor and preserved in the bill of exceptions may be considered on appeal.

2. **SPECIFIC PERFORMANCE: Agent's Authority: Subject to Approval.** A committee of an eleemosynary corporation was authorized to sell a designated farm of fifty-one acres at "such price per acre as seems to them best," and the chairman placed the land in an agent's hands to sell at $7500, and he reported an offer of $7000, and to his letter the chairman replied in writing that the committee would not accept that price, but if the proposed buyer would pay $7250 he would "try and get the committee to authorize me to make the sale," and without waiting for further authority, the agent entered into a written contract with plaintiffs to sell at $7250 cash. *Held,* that the agent had no authority to make the contract, but the letter of the chairman to him clearly indicates that the sale at that price was to be subject to the approval of the committee, and without such approval or a subsequent ratification by the corporation the contract cannot be enforced by the purchasers.

3. ————: **Agent of Corporation: Authority to Sell Real Estate: Not in Writing.** No agent has authority to sell the lands of a corporation unless his authority is in writing, and no written contract made by him with a purchaser is binding upon the corporation unless he is authorized in writing by his principal to make said contract. [Disapproving Donovan v. Brewing Co., 92 Mo. App. 341; and distinguishing King v. Phoenix Ins. Co., 195 Mo. 290.]

4. ———: **Unauthorized Sale: Ratification: Purchaser's Knowledge of Custom.** The fact that the chairman of the committee, authorized by the corporation to sell the land in question, had, with the knowledge and consent of the committee, practically acted for it in all business transactions for the sale and investment of funds for eighteen years or more, did not mislead the purchasers from an unauthorized agent, if they knew nothing of it and were not induced thereby to enter into a contract of sale with the agent; and his sole approval of the sale, in view of the fact that he had in writing stated to the agent that if the land were sold at the named price he would try to get the committee to approve it, cannot be held to be a ratification —for he clearly did not pretend to act for the committee in the concrete case.

5. ———: ———: ———: **Knowledge.** Ratification of a sale of real estate presumes full knowledge of the facts. A board of directors of a corporation cannot be held to have ratified in its behalf a sale of land by an unauthorized agent if whatever they did towards seeming ratification was done under the mistaken belief that the approval by the chairman of the committee to whom they had committed the sale was "the action of the committee."

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Campbell Allison* and *Frank E. Richey* for appellants.

(1)   The defendant corporation, by its board of directors, authorized the advisory committee to sell the Russell farm at such time, such price and terms as met their discretion.   The finance committee, having power to sell the farm, had power to appoint Mittleburg agent to sell.   R. S. 1899, sec. 971.   Mittleburg's appointment as agent to sell was not invalid for want of a formal meeting of the committee, because:   (a) Neither the statutes nor the by-laws of the defendant corporation require that the committee hold formal meetings, and by authority of the board any two members of the committee could act for it. (b)   By its course of dealing for eighteen years, the committee, having held only three

or four formal meetings, had thereby established a method of doing business without formal meetings, which manner was ratified by the principle of acquiescence. Madden v. Paroneri Co., 75 Mo. App. 359. (c) "When a corporation has clothed its agent with power to do an act upon the existence of some extrinsic fact, necessarily and peculiarly within the knowledge of the agent, and of the existence of which the act of executing the power is itself a representation, a third party dealing with such agent in entire good faith, pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying its truth to his prejudice." Forbes could have been authorized, at a formal meeting of the committee, to appoint Mittleburg agent to sell the land in question. By his letter, Forbes represents to Mittleburg that this prerequisite formality had been complied with. The exercise of the power itself presupposes that this had been done. Whether it had been done was peculiarly within the knowledge of Forbes. Plaintiffs had no notice that the prerequisite formality had not been complied with, and acted in entire good faith, pursuant to the apparent power of the agent, and the corporation was bound by the act of its agent. Morawetz on Corporations, p. 62, rule 6; Clark on Corporations, pp. 498, 499, 525; 2 Cummings, Corporations, 119-149; Christian University v. Jordan, 29 Mo. 70; Lungstras v. German Ins. Co., 57 Mo. 107; Edwards v. Thomas, 66 Mo. 468; Tenbrook v. Winn Boiler Co., 20 Mo. App. 19; Smith v. Railroad, 74 Mo. App. 48; Van Cleave v. Gas Co., 82 Mo. App. 684; Rosenbaum v. Gilman, 101 Mo. App. 126; Marshall v. Express Co., 7 Wis. 1; Bank v. Elevator Co., 90 Mich. 555; Sherman C. T. Co. v. Swigart, 43 Kan. 292; Bank v. Bank, 48 N. J. L. 513; McNeal v. Chamber of Commerce, 154 Mass. 277; Mining Co. v. Bank, 104 U. S. 192; Credit Co. v. Machine Co., 54 Conn. 158; Knox County v. Aspinwall, 21 How. 539; Clark v. Washington, 12 Wheat. (U. S.) 544; Moore v. Mfg. Co., 113 Mo.

106. Mittleburg's appointment as agent to sell was not in conflict with the Statute of Frauds, because corporations, being artificial beings, incapable of signing authority to their agents, are from necessity unaffected by the last clause of the Statute of Frauds. The statute expressly enables them to contract by parol through their agents. Mittleburg's act in signing the contract with plaintiffs was the act of the corporation. R. S. 1899, sec. 974; Donovan v. Brewing Co., 92 Mo. App. 341; Maddern v. Realty Co., 75 Mo. App. 358; King v. Ins. Co., 195 Mo. 307; Lungstras v. Ins. Co., 57 Mo. 107. (2) Mittleburg having been duly appointed agent to sell, the memorandum of sale signed by him as agent of the defendant contains a sufficient description of the property and complied with the requirements of the Statute of Frauds. Mantz v. Maguire, 52 Mo. App. 136; Black v. Crowther, 74 Mo. App. 480; Ellis v. Bray, 79 Mo. 227; Kelley v. Thuey, 102 Mo. 526; Smith v. Wilson, 160 Mo. 657.

*Eugene S. Wilson* and *Arthur B. Shepley* for respondent.

(1) The authority to sell the farm was placed in the advisory and investment committee by resolution formally adopted by the board of lady managers; this power was to sell at "such price as to the committee seemed best." Pursuant to this discretionary power the advisory committee held a meeting and fixed a price at which it was willing to sell, but it never met again to consider any subsequent offers. The powers of this committee were discretionary and non-delegable. 21 Am. and Eng. Ency. Law (2 Ed.), p. 857. (2) The resolution creating the advisory committee provided that "two members shall constitute a quorum," but no further meetings were held and the committee therefore did not act; the only other time two members could act was on the absence of the other members from

the city. As the other members were not absent from the city and were not even consulted, the action of Mr. Forbes could not bind the defendant. (3) In the absence of written authority to the agent Mittleburg, authorizing the execution of the contract for the sale of the farm for $7250, the defendant is not bound by said contract. R. S. 1899, sec. 3418; Johnson v. Fecht, 185 Mo. 343; Kirkpatrick v. Pease, 202 Mo. 489; Young v. Ruhwedel, 119 Mo. App. 239.    (4) Ratification of a contract for the sale of land must be in writing and as definite as the original authority.    Hawkins v. Mc-Groarty, 110 Mo. 550; Roth v. Goeger, 118 Mo. 558; Johnson v. Fecht, 185 Mo. 335.    (5) The contract as made was verbally changed and never ratified; estoppel not being pleaded cannot be relied upon.    Moots v. Cope, 126 S. W. 184; Railroad v. Curtis, 154 Mo. 20.

WOODSON, J.—Plaintiffs filed their bill in equity in the circuit court of St. Louis county against the defendant, an eleemosynary corporation, organized and existing under the laws of the State of Missouri, for the specific performance of a contract for the sale of a tract of land situate in said county.    The cause is here on appeal from an order and judgment of that court sustaining a demurrer to plaintiffs' evidence.

The petition alleges (a) that Mittleberg, a real estate agent, was duly authorized in writing, signed by defendant, to make said contract; and (b) ratification of said contract by defendant on November 19, 1906.

The answer was a general denial and a plea of the Statute of Frauds, denying the agent, Mittleberg, was ever authorized in writing to make said contract on behalf of defendant.

The following is the contract sued on:

"St. Louis, Oct. 18, 1906.

"Received of Wm. Lindhorst, Wm. D. Lindhorst and Gustav H. Lindhorst the sum of one hundred dollars, being as earnest and binding money and on ac-

count of the purchase price of a certain tract of land containing 51.13 acres situated on the northwest corner of the Rock Hill and Watson Road, part in section 8, township 44, range 6 east, in the county of St. Louis, Mo., which said tract of land was this day sold to said Lindhorsts for the price and sum of $7250 for the whole tract, terms to be cash on delivery of a full warranty deed for the land, free and clear of all encumbrances except the taxes for 1907 and thereafter. This sale to be consummated on or before November 1, 1906, and to be subject to the approval of owners and right of possession of the present tenant to January 1st, 1907. If the title to said land is defective and cannot be perfected within a reasonable time, then said earnest money shall be returned to the purchasers, as also a reasonable fee for the expenses of examining title, not exceeding twenty-five dollars.

"ARTHUR MITTLEBERG,

"For the Owners.

"We hereby agree to the above.

"WM. LINDHORST,

"WM. D. LINDHORST,

"GUSTAV H. LINDHORST."

The land in question had been devised to defendant by one Alexander Russell, several years prior to the commencement of these negotiations.

In 1889 the board of lady managers, by resolution, created an "Advisory and Investment Committee" of gentlemen and prescribed the duties of said committee —"to counsel with, give advice and act for and in behalf of the board of managers in all matters pertaining to the real estate and investments of the corporation." It conferred power on said committee "to take charge of, control, manage and safely keep all invested funds, consisting of bonds, stocks, mortgages, notes and other securities," and it further authorized said committee "to invest any funds of the corporation, change, by sale or otherwise, any invest-

ments when deemed advisable by them, and reinvest the proceeds." Said resolution contained also the following: "Two of which committee shall constitute a quorum for business, and in the absence of others from the city, any two of whom may act for said committee."

Mr. Moses S. Forbes was a member of the first committee and continued to be until the beginning of this suit. He was also, at the time this suit was begun, treasurer of the investment fund, and had been for a long time prior thereto. In addition to this, he had, by consent, acted as chairman of this committee during practically all the time of its existence. This advisory committee held but three or four formal meetings during the eighteen years of its existence, the custom being that Mr. Forbes, the chairman, would learn the wishes and opinions of the other members and then act on it and report it to the board as the act of the committee.

On November 20, 1905, at a meeting of the board of lady managers, a letter from Mr. Forbes in regard to the sale of the land given to the home by Mr. Russell was read. Mr. Forbes requested the board of directors to authorize the president and secretary to sign the paper and permit the advisory board to sell the land at a certain price named by him in the letter. Mrs. Curtis said that the price mentioned was too low, and a majority of those present were asked to ascertain the value of land in Webster. Moved by Mrs. Steele and seconded by Mrs. Curtis, that the matter be referred to the advisory board. Carried. Secretary advised to write to Mr. Forbes to that effect. The advisory and investment committee was then composed of Messrs. Bixby, Forbes, Nagel, Rouse and Whittaker.

On January 17, 1906, the board of lady managers adopted a resolution authorizing "the advisory and investment committee to sell and the president to convey

the farm, section 8, township 44, range 6 east, bequeathed to the asylum by the late Alexander Russell. The committee are authorized to sell the farm as a unit or in parcels as their judgment may direct and to accept such price per acre as seems to them best.''

The paper above referred to, authorizing the advisory board to sell the land, is as follows:

"St. Louis, Mo. Nov. 20th, 1905.
''To Whom It May Concern:

''At a regular meeting of the board of managers of the St. Louis Protestant Orphan Asylum, held November 20, 1905, the following resolution was adopted and made a matter of record:

'' 'Resolved, That the advisory and investment committee be and are hereby authorized and empowered to sell, and the president to convey, the farm, section 8, township 44, northeast, range 6 east, bequeathed to the Asylum by the late Alexander Russell. The committee are authorized to sell the farm as a unit or in parcels as their judgment may direct, and to accept such price per acre as seems to them best.'

"Mrs. Nida B. Stickney, President.
'' (Seal)  Mrs. A. G. Steele, Secretary.''

Some time later Messrs. Forbes, Bixby, Rouse and Nagel, members of the committee, met and fixed the price at which the farm should be sold, but what that price was does not appear, except it was too high to be sold for that price.

Forbes then, orally, placed the land in the hands of Mittleberg, a real estate agent, for sale, who afterwards reported that he had a purchaser who would pay $4000 for twenty-eight acres of the land.

After some negotiations, which are not here material, Mr. Forbes on May 19th, 1906 wrote the following letter to Mr. Mittleberg, to-wit:

''Dear Sir: Since my interview with you I have seen the members of the advisory and investment committee of the St. Louis Protestant Orphan Asylum in

regard to the sale of the farm, and offer of $4000 for twenty-eight acres, more or less, which was declined by said committee, and am authorized to say on its behalf that it will favorably entertain an offer of $150 per acre for the entire tract, fifty acres more or less, and authorize you to consummate a sale at the price per acre mentioned, but for the tract as a whole, and upon terms of payment subject to approval of said committee, tenant to be privileged to have his crops upon payment to purchaser of rent paid to the Asylum.''

Mittleberg was unable to sell the land for the price before stated, and on or about October 15th communicated that fact to Forbes, and notified him that he had an offer of $7000 for the entire tract.

In reply, Mr. Forbes wrote the following letter, to-wit:

''St. Louis, Oct. 17, 1906.

''Mr. Arthur Mittleberg:

''Dear Sir: I have conferred with the other members of the advisory committee and do not find them disposed to accept the offer of $7000 for the farm, 51 acres. The land is exempt from taxation and costs nothing to carry, and the Asylum does not need money and does not have to sell, besides the land is really worth more than the price asked and must become more valuable. I cannot bring the committee to think that we ought to shade our price from $7500, but if the proposed buyer will divide the difference between $7500 and $7000, paying $7250, I will try and get the committee to authorize me to make a sale. To accept this price would involve your shrinking your commission $50, the payment of rentals to January 1, 1907, besides all costs in connection with the transaction in the way of preparation of papers in case a sale is made.

''Yours truly, M. S. Forbes.''

Without further ado, Mittleberg, upon the receipt of this letter from Forbes, entered into the contract of

sale, dated October 18, 1906, heretofore set out. Upon the execution of the contract, Mittleberg testified that he notified Forbes, by phone, that he had sold the land to plaintiffs, and that Forbes replied that is all right. Forbes furnished Mittleberg with a copy of Russell's will, also the articles of incorporation of the defendant, which were required by the examiners of the title to the property. Shortly thereafter Forbes wrote the president of defendant "that the committee of which he was a member had sold the property for $7250 cash." After Forbes had notified defendant of the alleged action of the advisory board in selling the land, Mrs. Stickney, the president of the board of managers, wrote him the following letter:

"Oct. 24, 1906.

"Mr. M. S. Forbes,

"Dear Sir: I hasten to place in your hands this slip of information given to me last night by our secretary. I know you will be as intensely interested as the board at a called meeting Monday, to discuss ways and means to meet the monthly bills. We are at the bottom of the 'hole.' When your letter was read, followed by this offer made through a member of our board, I was directed to confer with you to see if the sale you are arranging for had gone too far to recall and give preference to this. You ought to know of this in any case.

"I am ill this a. m. or would call to see you.

"Most sincerely,

"Nida Bailey Stickney."

The offer mentioned in the letter from Mrs. Stickney was made by Christ Reachl, who was in charge of the real estate of the St. Louis County Trust Company, which was to the effect that he would pay $250 per acre for thirty acres of the tract, and stated that he had a client who would probably give $250 per acre for the remaining twenty-one acres.

Without going into details the board of lady managers refused to convey the land to plaintiffs, and subsequently thereto the latter tendered the full contract price agreed upon between them and Forbes, which was refused, and this suit was thereupon instituted.

I. While the record discloses the fact that the trial court excluded much of the evidence offered by the appellants, yet this being an equitable proceeding, and the excluded evidence having been preserved in the bill of exceptions, this court has the right to pass upon and to admit or reject it as the right may appear. [Gibbs v. Haughowout, 207 Mo. l. c. 391.] Without stopping to consider this preliminary question, we will consider that all the evidence offered should have been admitted by the trial court.

Counsel for respondent contend that, notwithstanding this court may admit the rejected evidence, still the demurrer to the evidence should be sustained by this court, for the reason that the record fails to disclose that the appointment of Mittleberg as agent to sell the land in question was in writing, and therefore the Statute of Frauds governs. It is not contended by counsel for appellants that Mittleberg was authorized in writing to make the sale in question. We must, therefore, determine whether or not the Statute of Frauds controls.

From a careful reading of the evidence in this case it will be seen that no one acting for the advisory committee or for the board of lady managers authorized orally or in writing the execution of the contract sued on, regardless of the Statute of Frauds.

The only written authority given by the Board of Managers was to the advisory and investment committee, and that was contained in the resolution dated November 20, 1905, heretofore copied. That authority was ''to sell the farm as a unit or in parcels as their judgment may direct, and to accept such price per acre as seems to them best.'' Conceding that the letter

written by Forbes on May 19, 1906, expressed the action of the committee, Mittleberg's authority was limited to make a sale at the price of $7500. His letter of October 17, 1906, does not purport to express the action of the committee or authorize Mittleberg to execute the contract for the sale of the land at $7250, but was written by Forbes in his individual capacity, and states that the committee was unwilling to sell for less than $7500, and merely suggested that if the offer reported by Mittleberg was increased to $7250, he would "try and get the committee to authorize me to make the sale."

It was upon the authority of that letter that Mittleberg undertook to make the contract of sale at $7250, while upon its face it unequivocally stated that the committee was unwilling to sell for less than $7500, and expressly negatived the existence of authority on the part of Forbes or Mittleberg to make a sale for a less figure.

The lack of authority in Forbes and Mittleberg to enter into the contract sued on is clearly indicated by that letter, which states that the terms of the sale as therein stated were "subject to the approval of the committee." It is not contended that such approval was even secured. In fact this record is barren of all evidence which even remotely tends to prove that Forbes ever took any step to "try and get the committee to authorize" the sale upon the terms therein suggested, or that he ever reported it to the committee or to any member thereof.

Section 3418, Revised Statutes 1899, in so far as is material to this case, reads: "No action shall be brought to charge any executor or administrator, etc. . . . and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract."

This court in discussing this statute in Johnson v. Fecht, 185 Mo. l. c. 342, said: "Prior to the passage of that act it had been held in this State that the authority of an agent to sign a contract for his principal for the sale of land need not be in writing, but might be conferred by parol. That statute was an amendment to the Statute of Frauds by adding to the then existing law. The law then provided that no action should be brought to charge any person upon any contract for the sale of lands, unless the contract was in writing 'and signed by the party to be charged therewith, or some other person thereto lawfully authorized.' The amendment added the words, 'And no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make such contract.' Since the passage of that amendatory act, it has uniformly been held that it is necessary to show that the agent had written authority 'to make the contract which he does make.' [Hawkins v. McGroarty, 110 Mo. 546; Roth v. Goerger, 118 Mo. 556; Fox v. Courtney, 111 Mo. 147; Greening v. Steele, 122 Mo. 287.]" To the same effect are Kirkpatrick v. Pease, 202 Mo. l. c. 489; and Young v. Ruhwedel, 119 Mo. App. l. c. 239.

Counsel for appellants do not question the correctness of the rule above announced as applied to individuals, but insist that the statute has no application to corporations, that is, they contend that a corporation may employ an agent by parol to sell its real estate, and that such contract will not violate the Statute of Frauds.

This contention is predicated upon the authority of Donovan v. Brewing Co., 92 Mo. App. 341. In discussing that question that learned court used this language: "But where the written contract for a lease for more than one year is made with an agent, and he was not authorized in writing, that renders the contract non-enforcible. For, construing sections 3414 and

3418, Revised Statutes 1899, of the Statute of Frauds, together, the law is that while an agent can make a contract leasing lands and tenements for less than one year without authority in writing, he cannot do so for more than one year. [Hoover v. Pacific Oil Co., 41 Mo. App. 317.] The contract in this case was made with defendant's agent, Dienger. But from the very necessity of the thing that law may not have room for application where the agent is the agent of a corporation, and the act of contracting for a lease, or of leasing, is such an act as is within the scope of his authority. For a corporation can only act through agents, and when the act of the agent is within the limit of the authority which his agency covers, it is the act of the corporation itself, and the agent may act as though he was the principal. [Smith v. Railroad, 74 Mo. App. 48, 55.] In this case it appears from defendant's letter introduced in evidence that Dienger was its 'general agent for the West' and that he had authority to sign a lease referred to in the letter, but not the one in question. The evidence in the case, including the letter, shows that Dienger's agency was to look after the sale of defendant's beer, which involved the renting of places where it might be sold. We, therefore, hold that in order to make a valid agreement for a lease, or the lease itself, Dienger did not need authority in writing.''

With all due regard for the opinion of that learned court, we are not favorably impressed with the reasoning by which the conclusions there stated are reached. The statute in question is general in its provisions, and contains no such exception as that interpolated into it by the court of appeals. Nor is there any better reason suggested for saying that the authority of an agent of a corporation to sell its real estate need not be in writing than there is for saying that the agent of an individual for the same purpose need not be in writing. It is common knowledge that prior

to the enactment of the amendment to said section 3418, innumerable suits had been brought and prosecuted for the specific enforcement of contracts for the sale of real estate made by agents who had no written authority authorizing them to make the sales; also for the recovery of commissions alleged to be due such agents for making such sales. In order to put a stop to that character of litigation, and for the purpose of preventing fraud and perjury, the amendment in question was wisely enacted. The evil at which the statute was aimed was feasting upon corporations as well as upon individual landowners; and there has been no suggestion made why the one should not be protected therefrom as well as the other.

The Donovan case, before cited, is based upon neither reason nor authority. The case of Smith v. Railroad, 74 Mo. App. 48, cited and relied upon as authority for the position that the Statute of Frauds does not apply to contracts made by agents of corporations for the sale of real estate, is not in point. There the Statute of Frauds was neither mentioned nor discussed. Nor is the case of King v. Phoenix Ins. Co., 195 Mo. 290, cited by appellants, in point. That case involved the authority of the agent of the insurance company, under section 974, Revised Statutes 1899, to bind the company by parol contract affecting its general business, and not under the Statute of Frauds governing the sale of real estate. In discussing that question, this court in that case, at page 304, said:

"Baile v. Ins. Co., 73 Mo. 371, has since been cited and approved, and the doctrine announced that, unless prohibited by statute, a corporation has all the rights of contracting, under the common law, that an individual has. [Liebke v. Knapp, 79 Mo. l. c. 24; Railroad v. Railroad, 135 Mo. l. c. 200; State ex inf. v. Lincoln Trust Co., 144 Mo. l. c. 592.] In the case last cited it was said: 'Corporations, when they are not restrained in any particular manner by their charters, may adopt

all reasonable means in the execution of their business which a natural person may adopt in the exercise of similar powers.'

"The same doctrine was taken as settled law in this State in Duff v. Fire Assn., 129 Mo. 460.

"Thus it will appear that the rule laid down in the Henning case, supra, has not been followed in this State since, but that, as pointed out in the Baile case, the statutes of this State (now Sec. 974, R. S. 1899) expressly provide that parol contracts may be binding upon aggregate corporations if made by an agent authorized to contract, and contracts may be implied on the part of such corporations from their corporate acts, or those of an agent whose powers are of a general character. In fact, while the Henning case was not expressly overruled in the Baile case, because it was not essential to the decision of that case that it should be overruled, nevertheless, it was distinctly pointed out in the Baile case that the learned judge who delivered the opinion in the Henning case had overlooked the express statute of the State, and it was further pointed out that the correct doctrine announced by the great weight of authority is that parol contracts of insurance are valid, unless expressly prohibited by statute. The rule thus announced in this State is in harmony with and amply supported by the great weight of modern authority. In 16 Am. and Eng. Ency. Law (2 Ed.), 852, it is said: 'The contract is sometimes evidenced by a binding slip signed by the insurer's agent, or by a memorandum in his record book, but neither the Statute of Frauds nor public policy requires it to be in writing, and it is equally valid if made orally.' Decisions from the Supreme Court of the United States, and from the Supreme Courts of Alabama, Illinois, Indiana, Iowa, Kansas, Maine, Massachusetts, Minnesota, Missouri, Nebraska, New York, Ohio, Oregon, Pennsylvania, South Carolina and Wisconsin are cited in the note to the text sustaining that doctrine."

The statute there considered referred to the power of the agent to bind the corporation by parol contract, touching its general business, and it was not and could not have been the intention of the Legislature to have repealed the Statute of Frauds which requires the authority of the agent to be in writing, by enacting said section 974, for the obvious reason that the former amendment was enacted long after the passage of section 974.

In our opinion the rule announced in the Donovan case is unsound, and should not be followed.

We are, therefore, of the opinion that the contract authorizing Mittleberg to sell the land in question to appellants was invalid, for the reason that it was not in writing as required by section 3418 of the Statute of Frauds.

That being true, we must hold that the action of the trial court in sustaining the demurrer to the evidence was proper.

II. It is finally insisted by counsel for appellants that, even though the contract sued on was invalid for violating the Statute of Frauds, still the judgment should be reversed, for the reason that it was subsequently ratified by Forbes. This insistence is predicated upon the evidence which tended to show that after Mittleberg had signed the contract sued on he reported that fact to Forbes, who assented orally thereto over the 'phone. Ordinarily it would not be contended that the oral approval of a contract by one member of the committee would constitute a ratification thereof by the committee itself; but in this case counsel for appellants contend that such approval by Forbes did amount to such a ratification by the committee, for the reason that with its knowledge and consent he had practically acted for it in all business transactions which had come before it for the last eighteen or twenty years.

Conceding that Forbes had so acted for the committee during that period, still it is not contended that

prior to this transaction appellants ever had any business dealings with him while so acting, or that they ever heard of that custom; consequently they could not have been misled thereby, nor on that account have been induced to have entered into the contract sued on. But upon the contrary, whatever may have been the practice in that regard, when we come to consider the concrete case before us, the record conclusively shows from start to finish that Forbes did not pretend to act for the committee, but the committee acted for itself, and that whenever Forbes undertook to act for it, he invariably provided that his action should be subject to the approval of the committee. Clearly, the committee had the right to abrogate the custom and assume its legal functions, as was done in this case, especially when no innocent person was injured thereby. Forbes, upon being notified of the sale over the 'phone by Mittleberg, wrote to Mrs. Stickney, the president of the board of managers, notifying her and the board of the pretended contract of sale to appellants. At the time of the reception of this notice, another offer was reported and submitted to the board to purchase thirty acres of the land for $250 per acre. The only action taken by the board of managers regarding the notice given was that "the secretary and treasurer were appointed a committee to investigate the matter, as it was the universal opinion that the land was worth more." Forbes was advised of this action of the board, and inquiry was made of him "if the sale you are arranging had gone too far to recall and give preference to the offer of $250 an acre." Counsel for appellants contend that this action of the board of managers also amounted to a ratification of the sale made by Mittleberg. That action of the board, instead of evincing an intention or desire to adopt or ratify the sale made to appellants, clearly indicates a disapproval and a repudiation of Forbes's oral approval of the sale, unless "it had gone too far to recall."

Independent of this disapproval, ratification pre-supposes full knowledge of the facts, which is wholly wanting in this case. Clearly the board of managers were laboring under the mistaken belief created by Forbes's letter that the pretended contract of sale was "the action of the committee," exercised under the authority of the resolution adopted by the board, November 20, 1905, heretofore copied in the statement of the case. The authority conferred upon the committee by that resolution was one of confidence and trust, and could not be delegated by it to Forbes or Mittleberg without the consent of the respondent, which was never obtained.

Judging from the character of the power conferred upon the committee by that resolution, there can be no doubt but what the board of managers, in the language of the counsel for respondent, "would have promptly disapproved the contract had they known that it represented the unauthorized action of Forbes and Mittleberg instead of the action of the committee."

This entire record fails to show a ratification of the pretended sale of this land for $7250 by either the advisory and investment committee or the board of lady managers, which the contract sued on expressly provided for.

But conceding that the pretended sale for $7250 was ratified by either the committee or the board of managers, or both, yet the record discloses the fact that Forbes on his individual responsibility changed the terms of the contract from $7250 cash to $5250 cash and the remaining $2000 on time, to be secured by deed of trust on the property sold. This alteration of the contract was neither authorized, ratified nor reported to the advisory and investment committee or to the board of managers.

Viewing this case in the light of the Statute of Frauds, or under the doctrine of ratification, we have

no hesitancy in saying that appellants wholly failed to make out a case. While in equitable proceedings the practice to give and refuse demurrers to the evidence does not exist, still in the case at bar no injustice to appellants has been shown or suggested from the trial court having resorted to that course of procedure.

Having discovered no reversible error in the record, the judgment of the circuit court should be affirmed. It is so ordered. All concur.