THE SIOUX CITY AND PACIFIC RAILROAD COMPANY, ·PLAINTIFF IN ERROR, v. THE FIRST NATIONAL BANK OF FREMONT, DEFENDANT IN ERROR.

Railroad: LIABILITY FOR ISSUANCE OF BILLS OF LADING. An agent of a railroad company, authorized to issue bills of lading, issued certain bills to a shipper for five cars of wheat. In fact less than one car load of wheat and about the same quantity of barley was shipped. Drafts were drawn by the shipper against the bills and attached thereto, and were delivered to a bank, which in good faith discounted the same and forwarded them for payment. The drafts being protested and the shipper having absconded, and leaving no property in the state, *held*, That as against the bank the railroad company was estopped from denying that it had received the wheat.

ERROR to the district court of Dodge County. Tried below before POST, J.

*Joy & Wright* and *N. H. Bell*, for plaintiff in error, cited *inter alia Baltimore & Ohio R. R. v. Wilkins*, 44

S. C. & P. R. R. Co. v. First National Bank.

Md., 11. *Grant v. Norway*, 10 C. B., 665. *Hubbersty v. Ward*, 8 Exch., 330. *Coleman v. Riches*, 16 C. B., 104. 1 Parsons Shipping & Admiralty, 187. *Schooner Freeman v. Buckingham*, 18 How., 182. 2 Daniels on Neg. Inst., 623. *The Lady Franklin*, 8 Wall., 325. *The Joseph Grant*, 1 Bissell, 193. *Sears v. Wingate*, 3 Allen, 103. *Dawes v. Perrin*, 16 N. Y., 325. *Emery v. Irving Bank*, 25 Ohio State, 360. *La Bank v. Lavielle*, 52 Mo., 380. *Fellows v. Steamer Powell*, 16 La Ann., 316. *Walter v. Brewer*, 11 Mass., 9. Hutchinson on Carriers, 101. 2 Redfield on Railways, 164, sec. 10.

*Marlow & Munger* and *Marshall & Sterret*, for defendant in error, cited *Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank*, 16 N. Y., 125. *Merchants' Bank v. State Bank*, 10 Wall., 604. *Griswold v. Haven*, 25 N. Y., 565. *Michel v. Ware*, 3 Neb., 229. *Dickinson v. Seeley*, 12 Barb., 99. *Savings Bank v. A. T. & S. F. R. R. Co.*, 20 Kan., 519. *Howard v. Tucker*, 20 Eng. C. L., 661. *The J. W. Brown*, 1 Biss. (U. S. C. C.), 76. *Relyia v. The N. H. R. M. Co.*, 42 Conn., 579. *Life Ins. Co. v. McGowan*, 18 Kan., 300. *Armour v. R. R. Co.*, 65 N. Y., 111.

MAXWELL, CH. J.

In the year 1879, the First National Bank of Fremont brought an action in the district court of Dodge county against the Sioux City & Pacific Railroad Company to recover the sum of $1500, with interest from the fourteenth day of November, 1877, upon the following bills of lading of which it was the assignee:

"SCRIBNER, NEB., Nov. 13th, 1877.

"List of articles received of George B. Watkins, in apparent good order, by the Sioux City & Pacific Rail-

road Company to be transported to Mo. Valley, as marked and described below, subject to the conditions and regulations of the published freight tariff of said company and the rules and conditions printed on the back of this *manifest.* It being expressly agreed and understood by the consignor that the said Sioux City & Pacific Railroad Company in receiving the said packages to be forwarded as aforesaid assumes no other responsibility for their safety than may be incurred on their own line:

| MARKS AND CONSIGNEE | NO. | DESCRIPTION OF ARTICLES |
|---|---|---|
| H. W. Rogers, Jr., and Bro., Chicago, Ill. | 12061 988 | Two cars of wheat in bulk. M. or L. C. A. Helm, Agent." |

Watkins, on the 13th of that month, drew on H. W. Rogers, Jr., & Bro. for the sum of $600 in favor of the bank, and attached the bill of lading to the draft as collateral security therefor, and delivered the same to the bank, which cashed the draft less the exchange, and transmitted the draft and bill of lading to Chicago. The draft was afterwards protested for non-payment. Car No. 12,061 contained 239 bushels and forty pounds of No. 3 wheat. Car No. 988 contained 330 bushels and ten pounds of barley.

The second bill of lading is as follows:

"SCRIBNER, NEB., Nov. 15th, 1877.

"Received from George W. Watkins, in apparent good order, by the Sioux City & Pacific Railroad Company, to be transmitted to Mo. Valley, the following articles as marked and described below, subject to the conditions and regulations of the published freight tariff of said company and the rules and conditions printed on the back of this *receipt,* it being expressly

agreed and understood by the consignor that the Sioux City & Pacific Railroad Company in receiving the said packages to be forwarded as aforesaid assumes no other responsibility for their safety than may be incurred on their own road:

| MARKS AND CONSIGNEE | NO. | DESCRIPTION OF ARTICLES GIVEN BY CONSIGNOR |
|---|---|---|
| H. W. Rogers, Jr., & Bro., Chicago, Ill. | 12061 988 2437 C.E.N.W. | Three cars bulk wheat M. or L. C. A. Helm, Agent." |

On the 15th of November, 1877, Watkins drew on H. W. Rogers, Jr. & Bro. for the sum of $900, in favor of the bank, and attached the bill of lading to the draft as collateral security therefor, and sold and delivered the same to the bank, receiving $900 therefor, less exchange. This draft was also protested for non-payment. No wheat was in fact shipped by Watkins in the cars described in the second bill of lading. After receiving the money on the second draft from the bank, Watkins absconded, and has no property in the state.

On the trial of the cause in the district court, the jury rendered a verdict in favor of the bank for the sum of $977.75, and also found specially that at the date named, No. 2 wheat was worth in Chicago $1.10 per bushel, No. 3 $1.03½, rejected ninety-four cents, and that the general grade of wheat shipped from Scribner at that time (November, 1877) was No. 2. A motion for a new trial having been overruled, judgment was rendered on the verdict. The case is brought into this court by petition in error.

It will be seen that the object of the action is to hold the railroad company liable on two bills of lading executed by its station agent to one Watkins, one of said bills being dated Nov. 13th, 1877, for two cars of wheat,

and the other dated Nov. 15th, 1877, for three cars of wheat, which bills of lading were transferred to the bank, the bank advancing $1,500 on them, relying on the statements therein contained that Watkins had shipped five full cars of wheat, when in fact the cars mentioned in the first receipt contained about one-half a carload of wheat and about one-half a carload of barley, and the three cars mentioned in the second receipt were never in fact shipped, and no wheat was in fact received by the railroad company at the time the receipt was given.    Is the company liable under such circumstances upon the bills of lading?    In the case of *Grant v. Norway*, 2 Eng. Law and Eq., 337, it was held that the master of a ship has no general authority to sign a bill of lading for goods which are not put on board the vessel; and consequently the owners of the ship are not responsible to parties taking a bill of lading which has been signed by the master without receiving the goods on board.    This case was decided in the common pleas in 1851.    No authorities are cited by the court to sustain its position, the court saying: "There is but little to be found in the books on this subject; it was discussed in the case of *Berkley v. Watling*, 7 Ad. and El., 29; but that case was decided on another point, although Littledale, J., said in his opinion the bill of lading was not conclusive under similar circumstances on the ship owner."    This decision was followed in *Hubbersty v. Ward*, 18 Id., 551, in the court of exchequer, Pollock, C. B., placing the decision upon a lack of power in the master.    See also *Coleman v. Riches*, 29 Id., 329.    These decisions were followed by the supreme court of the United States in the case of the *Schooner Freeman v. Buckingham*, 18 How., 182.    In that case the claimant, being the sole owner of the schooner named, contracted with one John Holmes to sell it to him for the sum of $10,000, payable by in-

stallments at different dates. By the terms of the contract John Holmes was to take possession of the vessel, and if he should make all the agreed payments, the claimant was to convey to him. The vessel was delivered to Holmes under this contract and he had paid one installment, the only one which had become due. Holmes permitted his son, Sylvanus Holmes, to have the entire control and management of the vessel and to appoint the master. Sylvanus Holmes transacted business under the style of S. Holmes & Co., and the flour mentioned in the bills of lading as having been shipped by him was never in fact shipped, the master having been induced to sign the bills of lading by fraud and imposition. The question before the court is thus stated in the opinion: "But the real question is, whether in favor of a *bona fide* holder of such bills of lading procured from the master by the fraud of an owner *pro hac vice*, the general owner is estopped to show the truth, as undoubtedly the special owner would be." It was held that the maritime law gave no lien upon the vessel, and that the general owner thereof was not estopped from alleging and proving the facts. In the case of *Dean v. King*, 22 Ohio State, 118, it was held in an action by the *shipper* against the owner of a steamboat engaged in the business of common carriers, to recover for goods as per bill of lading, that the defendants are liable only for so much of the goods as was actually received on the boat or delivered to some one authorized to receive freight on her account. This seems to have been an action between the original parties. In *Dickerson v. Seelye*, 12 Barb., 99, the court held that as between the shipper of the goods and the owner of the vessel a bill of lading may be explained as to the quantity and condition of the goods, yet it cannot be so explained as between the owner of the vessel and a consignee or assignee of the bill of

38

lading who has in good faith advanced money on the strength of it, and has thus been induced by the master's signing the bill to do an act changing the situation of the parties. In such case the bill of lading is conclusive on the owner in respect to the quantity of goods. The court say: "As between the owner of the vessel and an assignee for a valuable consideration paid on the strength of the bill of lading, it may not be explained. *Portland Bank v. Stubbs*, 6 Mass., 422. Abbott on Shipping, 323–4. *Bradstreet v. Lees, M. S.*, U. S. District Court. In such case the superior equity is with the *bona fide* assignee, who has parted with his money on the strength of the bill of lading."

In the case of *Armour v. Michigan C. R. R. Co.*, 65 N. Y., 111, the defendant's agent, having authority to issue bills of lading, upon delivery to him by M. of a forged warehouse receipt, issued to M. two bills of lading, each stating the receipt of a quantity of lard consigned to plaintiffs at New York, and to be transported and delivered to them. M. drew sight drafts on the plaintiffs, to which he attached the bills of lading; these were delivered to a bank and were forwarded to New York, and the drafts were paid by plaintiff upon the faith and credit of the bills of lading. It was held that the defendant was bound by the acts of its agent, the same being within the apparent scope of his authority, and was estopped from denying the receipt of the lard. In the case of the *Savings Bank v. A. T. & S. F. R. R. Co.*, 20 Kansas, 519, the court held that where the agent of a railroad company has authority to receive grain for shipment over its road, and issue in the name of the corporation a bill of lading for each consignment received, and issues two original bills of lading for a single consignment, the two bills of lading having been assigned to the bank, which advanced money thereon in good faith, and the ship-

per being insolvent and having absconded, that the railway company was estopped by its statement and promise in the bill of lading to deny that it has received the grain mentioned therein. The court say: "The custom of grain dealers is to buy of the producer his wheat, corn, barley, etc., then deliver the same to the railroad company for shipment to market. The railroad company issues to the shipper its bill of lading. The shipper takes his bill of lading to a bank, draws a draft upon his commission merchant or consignee against the shipment, and attaches his bill of lading to the draft. Upon the faith of the bill of lading and without further inquiry the bank cashes the draft, and the money is thus obtained to pay for the grain purchased, or to repurchase other shipments. In this way the dealer realizes at once the greater value of his consignments, and need not wait for the returns of the sale of his grain to obtain money to make other purchases. In this way the dealer with a small capital may buy and ship extensively; and while having a capital of a few hundred dollars only, may buy for cash and ship grain valued at many thousands. This mode of transacting business is greatly advantageous both to the shipper and the producer. It gives the shipper who is prudent and posted as to the markets almost unlimited opportunities for the purchase and shipment of grain, and furnishes a cash market for the producer at his own door. It enables the capitalist and banker to obtain fair rates of interest for the money he has to loan, and insures him, in the way of bills of lading, excellent security. It also furnishes additional business to railroad companies, as it facilitates and increases shipments to the markets. A mode of doing business so beneficial to so many classes ought to receive the favoring recognition of the courts to aid its continuance." The question whether or not

bills of lading are negotiable does not enter into the case. All the testimony shows that the bills of lading in controversy were issued by an authorized agent of the railroad company, and that he not only had authority to issue such bills, but it was one of the duties imposed upon him. As against an innocent purchaser of the bills it will not do to say that the agent had authority to issue bills of lading duly signed, only in cases where shipments were made, and no authority where shipments were not made. The company itself has invested its own agent with the authority to issue bills of lading, and when duly issued they are not the bills of the agent but of the railroad company. The representations, therefore, thus made in the bills that the company has received a certain quantity of grain for shipment, is a representation to any one who, in good faith relying thereon, sees fit to make advances on the same. If these representations are false, who should bear the loss? The party who appointed, placed confidence in, and gave authority to make the bills, or the one that in good faith, relying thereon, purchased or advanced money on the same? In *Lickbarrow v. Mason*, 2 T. R., 63 (1 Smith's Leading Cases, 6 Am. Ed., 1044), Ashurst, J., says: "We may lay it down as a broad, general principle, that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled said third person to occasion the loss must sustain it."

This case presents every element necessary to constitute an estoppel *in pais*, a representation made with full knowledge that it might be acted upon, and subsequent action in reliance thereon by which the defendants in error would lose the amount advanced if the representation is not made good. This principle was entirely overlooked in *Grant v. Norway*, and the cases following it. The defendant in the court below

is therefore liable to the bank to the extent of the amount advanced on the faith of these bills, not exceeding the value of the grain certified to as having been shipped.   Objections are made to the proof of the price of wheat at Scribner at the time stated in the bills, to proof in reference to the grade of wheat shipped from that place, and to the weight of an ordinary car-load, but as the verdict is for several hundred dollars less than the amount advanced by the bank on the bills of lading in question, and much less than it should have recovered, it is unnecessary to consider them.   There is no error in the record of which the plaintiff in error can complain, and the judgment must be affirmed.

JUDGMENT AFFIRMED.