THE ST. LOUIS AND IRON MOUNTAIN RAILROAD COMPANY

*v.*

RUSSEL M. LARNED.

*Filed at Ottawa June 21, 1882.*

1. CARRIER—*liability beyond its own line of conveyance.* While it is true that a railroad carrier may by contract restrict its liability to its own line, there is no doubt that it may also extend its liability beyond its own line.

2. So, where a railroad company in its own wrong shipped a lot of cotton from its depot in Arkansas, to Waterville, in the State of Maine, beyond the terminus of its road, and on the application of the agent purchasing the cotton, gave him a bill of lading containing a printed stipulation restricting its

liability to its own line of road, naming the number of bales, and containing this entry, written in a blank: "To be forwarded from Waterville, Maine, (where the cotton is now lying) at consignee's expense. All charges for transportation to that point, and necessary charges, to be paid by him,"—and the oral evidence showed it was to be transported to Putnam, Connecticut, it was *held*, that the company was liable to the assignee of the bill of lading, the consignee, for the value of the cotton, on account of its non-delivery at Putnam.

3. SAME—*which of two carriers liable.* An agent for eastern parties bought cotton in Arkansas, which he left at the defendant's railroad depot, taking receipts for the same, but gave no orders for its shipment, and the railroad company, without any authority from such agent, shipped the same to Waterville, Maine, where another company—the Maine Central Railroad Company—delivered the same to a person who was not in fact entitled to it. On learning the facts the defendant railroad gave a bill of lading, agreeing to transport the cotton to the person who was entitled to it, in Connecticut, at the consignee's cost and expense, which was not done, the person receiving the cotton refusing to give it up, claiming it was bought for him. The agent drew a draft on his principal, to which he attached the bill of lading, properly assigned, which was paid by the principal, and the latter brought suit against the defendant railroad for the value of the cotton, and recovered. It was contended that the consignee should have sued the Maine Central railroad, and not the defendant: *Held*, that while he might have waived the defendant's contract, and have sued the other company for a conversion, or the person receiving the cotton, he was under no obligation to do so, and that the recovery against the defendant was warranted.

4. SAME—*estoppel to assert facts that would defeat transfer of property by an assignment of a bill of lading.* While it may be that property in the adverse possession of another is not transferable so as to pass the title, yet where a railroad company gives a bill of lading reciting that the property is then lying in a depot at a certain place, and agrees to forward the same to the consignee, and others advance money on the faith of such bill of lading, which is assigned by the shipper, the railroad company will be estopped, as against such persons, from showing that at the time of giving such bill of lading, and its indorsement, the goods were in the adverse possession of another person, so as to defeat an action brought by the consignee so advancing money on the bill of lading.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. CHARLES H. WOOD, for the appellant.

Mr. E. C. LARNED, and Mr. A. M. PENCE, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It appears that one G. T. Potter, in the years 1879 and 1880, was engaged in Arkansas in the purchase of cotton for Lockwood & Co., of Waterville, in Maine, and appellee, of Providence, Rhode Island, and other eastern manufacturers. They furnished him money, and he purchased the cotton and delivered it to appellant, at its depot in Texarkana, when receipts or tickets were given to him as each separate lot was delivered.    When he wished to make a shipment he returned the tickets, and a bill of lading was given him.    He thereupon drew on the consignee for the value of the cotton thus shipped, and attached the bill of lading and obtained the money on the draft.    In this manner he raised money to pay for the cotton he purchased.    Having cotton in the depot for which he held tickets, the freight agent by mistake shipped fifty bales to Waterville, which were intended to be shipped to Larned, at Providence.    When Potter came to ship it to Larned he heard of the mistake, but being informed that it was still at Waterville, it was agreed that the railroad company would have it reshipped to Putnam, Connecticut. Thereupon the railroad company gave Potter a through bill of lading, using an ordinary printed blank, with all of the terms and conditions, but writing in the undertaking to so deliver it.    This bill of lading was assigned to Larned, attached to a draft drawn on him and sent forward, and the draft was paid.    The railroad company failed to make delivery.    Larned was informed the cotton was at Waterville, but on inquiry it was found that the last carrier, the Maine Central Railroad Company, had delivered it to Lockwood & Co. On demand they refused to deliver it to Larned, and he sued appellant for a failure to deliver according to the terms of its bill of lading.    A trial was had in the Superior Court of Cook county, resulting in a verdict and judgment in favor of plaintiff.    The case was removed to the Appellate Court,

the·judgment was affirmed, and defendant appeals to this court.

It is urged that railroads may, by express contract, limit their liability to loss on their own road, and against loss occurring beyond the terminus of their own line, and that the bill of lading in this case contained a restriction of that kind. Admitting this bill of lading does contain such a stipulation, after naming the number of bales of cotton shipped, it contains this: "To be forwarded from Waterville, Maine, (where the cotton is now lying) at consignee's expense. All charges for transportation to that point, and necessary charges, also to be paid by him." This was written in a blank in the bill of lading. While it is true that a railroad carrier may restrict its liability to its own line, it can not be denied that it may extend its liability beyond its own line. It in this case did in terms agree to forward the cotton from Waterville, and the oral evidence shows it was to Putnam, Connecticut. The company thereby undertook to transport this cotton from Waterville to Putnam. It is no answer to say the cotton was not there. It had been put in their depot and custody to be held for shipment, and they, of their own wrong, and without authority or orders from the holders of their receipts, had sent it to Waterville, and they were bound to return it to Potter, at Texarkana, or respond in damages, had he demanded it. But he waived that right, and agreed that they might deliver it at Putnam, and this they undertook to do by this contract, and the company was bound to perform the undertaking.

It is urged that the suit should have been against the Maine Central Railroad Company. If an action would lie against it for a wrong delivery, it is in favor of appellant. Potter did not place the cotton in its possession, nor did he authorize or direct it to be done. It was placed in its possession by appellant, of its own wrong. Then why require Potter or his assignee to sue that company? It may be that

he might, if he chose, have waived the contract of appellant, and sued that company for a conversion of the property, but he was under no obligation to do so.   The same is true as to suing Lockwood & Co., as neither he nor his assignee placed the cotton in their hands.

It is claimed that the assignment of the bill of lading did not transfer the title, because it was in the adverse possession of Lockwood & Co., who claimed to own it at the time the assignment was indorsed.   Concede this to be true under ordinary circumstances, appellant is estopped to deny that the cotton was at Waterville.   The company say in its bill of lading that the cotton is lying at that place, and the bank who received the bill of lading with the assignment, and advanced the money on it, we may presume, would not have done so had it known this statement was untrue, and the cotton was in the possession of an adverse claimant, and could only be recovered at the end of a law suit.   It was by this statement of appellant that each successive assignee was induced to advance money on it, and it would be a fraud on them to permit appellant to escape liability by showing that this statement on which they acted was untrue.   It presents a clear case requiring the application of an estoppel.   It is in the fullest sense an estoppel upon appellant.

It is insisted that the damages were assessed too high.   If it were conceded that the finding and assessment of damages is not the finding of a fact which has been found the same way by the Appellate Court, and we can look into the evidence to determine the correctness of the finding, the evidence clearly sustains it.   This being true, there is no force in this position.

Perceiving no error in this record, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*