| 96 665 |
| d120 76 |

### American National Bank v. Georgia Railroad Co.

1. Where goods were shipped upon a through contract of shipment over the lines of several connecting railway companies, and the last of these companies accepted the goods from the next preceding carrier, with notice that the initial carrier had issued to the consignor a through bill of lading reciting that the entire freight charges had been prepaid, although the notice was also to the effect that this recital was erroneous, yet where under these circumstances such last connecting carrier paid the freight charges which had accrued up to the time it took charge of the consignment, it did so at its own risk, relatively to the rights of an innocent

person who had taken from the consignor the bill of lading duly indorsed, in the belief that the freight had been actually prepaid, and upon the faith of such belief had accepted as cash a draft drawn by the consignor upon the consignee, to which draft the bill of lading was attached as was usual in the course of such transactions.

2. Under the facts recited, enough information was brought to the knowledge of the last carrier to put it upon inquiry as to the fact of prepayment, and as to the then ownership of the bill of lading; and if it failed to take the proper steps to ascertain the real facts and protect itself accordingly, it cannot thereafter set up a refusal by the innocent holder of the bill of lading to pay the freight it had earned and the freight charges it had advanced, as a defense to an action of trover by such holder for the goods consigned; and this is true whether the freight charges upon the consignment had been actually prepaid or not.

August 16, 1895. By two Justices.

Complaint in trover. Before Judge EVE. City court of Richmond county. November term, 1894.

JOSEPH R. LAMAR, for plaintiff.
JOSEPH B. & BRYAN CUMMING, for defendant.

SIMMONS, Chief Justice.

Nathan, a grain merchant, shipped from Kansas City, Missouri, two carloads of grain to Wallace & Co. of Augusta, Ga., over the Missouri Pacific Railway, taking a through bill of lading to Augusta, signed by the proper officer of the Missouri Pacific Railway Company. Nathan gave his check upon a bank for the amount of the freight; the check was accepted as cash by the agent of the railway company, and the bill of lading was marked by the agent, "freight prepaid." Nathan took the bill of lading, drew a draft on Wallace & Co., the consignees, attached the bill of lading to the draft, and negotiated it to the American National Bank of Kansas City, the bank taking it for absolute credit in the usual course of business. The way-bills and manifests issued by the Missouri Pacific Railway Company for the grain con-

tained the entry: " Delivering line will please collect all freight charges. Through error, bill of lading has been issued reading prepaid. This bill of lading must not be protected." When the grain arrived in Atlanta it was delivered to the Georgia Railroad Company, which received the way-bills with these indorsements upon them. The Georgia Railroad Company paid the freight from Kansas City to Atlanta and carried the grain over its line to Augusta, and upon the arrival of the grain at Augusta, demanded the freight it had paid to the other companies which had transported the goods from Kansas City to Atlanta, and the freight which it had earned upon its own road. This demand was refused. The goods were demanded of the Georgia Railroad Company by the agent of the American National Bank; the demand was refused; and the bank thereupon brought its action of trover against the railroad company to recover the grain. The judge, to whom the case was submitted without the intervention of a jury, decided that the plaintiff could not recover.

If the case were between the American National Bank and the Missouri Pacific Railway Company, it would, under many decisions, be free from difficulty. The law seems to be, that where an agent has authority to issue bills of lading and does issue one with certain representations contained therein, and the bill of lading is negotiated to an innocent third person, the railroad company, as between itself and such third person, is estopped to deny the representations made in the bill of lading. Under these decisions it is immaterial that the bill of lading is not negotiable in the strict sense of the term. A representation in a non-negotiable chose in action, when acted upon, is, according to the usual rule applied in cases of estoppel, held to be equivalent in all respects to one made in the case of a negotiable paper. Some of the decisions referred to are also put upon the ground,

that where one of two innocent parties must suffer from the wrongful act of a third party, the law casts the. burden of loss upon him by whose act, omission or negligence such third party was enabled to commit the wrong which occasioned the loss.   The superior equity is with the *bona fide* assignee who has parted with his money upon the faith of the recitals contained in the bill of lading.   2 Am. & Eng. Enc. of Law, Bill of Lading, p. 227, and cases cited; Bank of Batavia *v.* Railroad Co., 106 N. Y. 195 ; Howard *v.* Tucker, 1 Barn. & Adol. 713 ; Armour *v.* Michigan Central R. Co., 65 N. Y. 114, 60 Am. Rep. 440 ; St. Louis R. Co. *v.* Larned, 103 Ill. 293 ; Brooks *v.* R. Co., 108 Pa. St. 529, 53 Am. Rep. 453 ; Wichita Savings Bank *v.* R. Co., 20 Kan. 519 ; Sioux City R. Co. *v.* First Nat. Bank, 10 Neb. 556, 35 Am. Rep. 488 ; Coventry *v.* Great Eastern Ry. Co., 11 Q. B. Div. 776 ; Abbott's Law of Merchant Shipping (13 Lond. ed.), p. 565, and cases cited.   A very large proportion of the business of the country is founded upon transfers of bills of lading ; and if the transferee were required at his peril to ascertain from the carrier whether the representations made in the bill of lading are true or not, it would practically put an end to this class of transactions.   The better and safer rule is, to hold that the carrier who issues the bill of lading is bound by the representations of his agents.   Mr. Justice Miller, in discussing this subject in the case of McNeal *v.* Hill, Woolworth's U. S. Circuit Reports, p. 96, says: " As civilization has advanced and commerce extended, new and artificial modes of doing business have superseded the exchanges by barter and otherwise which prevail while society is in its earlier and simpler stages. The invention of the bill of exchange is a familiar illustration of this fact.   A more modern, but still not recent invention of like character, for the transfer, without the cumbersome and often impossible operations of actual de-

livery of articles of personal property, is the indorsement or assignment of bills of lading and warehouse receipts. Instruments of this kind are *sui generis*. From long use and trade they have come to have among commercial men a well-understood meaning, and the indorsement or assignment of them as absolutely transfers the general property of the goods and chattels therein named as would a bill of sale. . . . If the warehouseman gives to the party who holds such receipt a false credit, he will not be suffered to contradict his statement which he has made in the receipt, so as to injure a party who has been misled by it." Horton, C. J., in the case of Wichita Savings Bank *v.* Railroad Co., *supra*, says: "Where one advances money on a bill of lading or buys the property therein set forth, by taking a transfer of such instrument absolutely, the only evidence which he has of the quantity of goods which he has bought or advanced money on may be the statement contained in the bill of lading. Indeed, one of the main uses of bills of lading of grain, at this day, is to afford shippers opportunity to obtain advances upon their shipments. When issued, the parties issuing them have the knowledge that they may and probably will be used with commission merchants, or at some bank, to obtain advances of money. In the most of cases this result is almost certain to follow." Under the facts of the present case, we think what has been said as to the liability of the initial carrier upon the representations contained in the bill of lading applies also as between the Georgia Railroad Company and the assignee of the bill of lading. When the Georgia Railroad Company received the shipment at Atlanta and paid the freight charges which had accrued up to that time, it did so with notice that the initial carrier had issued to the consignor a through bill of lading reciting that the entire freight charges had been prepaid; and its agents ought to have known that in all

probability the bill of lading had passed into the hands of third parties who had acted upon the faith of this representation. Having such notice as was sufficient to put it on inquiry, it ought to have ascertained, before it paid the charges and accepted the shipment, whether the bill of lading had been negotiated or not; and having failed to make any inquiry, we do not think it can hold the goods, either for its own charges or those paid by it, as against an innocent purchaser under the bill of lading. Its acceptance of the shipment upon this bill of lading was an adoption of the bill of lading as issued, and it became responsible to innocent third parties for such statements as were contained in that instrument, just as if it had issued the same in the first instance.

*Judgment reversed.*