## 37.  ASKEW & CO. *v.* SOUTHERN RAILWAY COMPANY.

1. The transferee of a bill of lading may maintain an action ex contractu against the carrier for failure to deliver to him all or any portion of the goods specified in the bill of lading; and this is true whether the loss of the goods or the shortage occurred before or after he acquired title to the bill of lading.
2. A railroad company which in its bill of lading has agreed to deliver goods to a connecting carrier and which does deliver a portion of the goods to the connecting carrier, the remainder of the goods being lost, may be sued for the shortage, as a breach of the contract of carriage, in the county in which it undertook to deliver to the connecting carrier.
3. Owing to imperfections in the pleadings, special directions are given in connection with the reversal of the judgment.

Action for damages, from city court of Atlanta—Judge Reid. June 4, 1906.

Argued January 15,—Decided January 24, 1907.  Rehearing denied March 2, 1907.

*W. C. Wright, J. F. Golightly,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman,* for defendant.

POWELL, J.  It appears from the petition that Askew & Co., the plaintiffs, ordered from Horne & Goans, of Chattanooga, Tenn., a car-load of corn.  Horne & Goans shipped the corn via Southern Railway, from Chattanooga, Tenn., consigned to themselves at Newnan, Ga., "order notify Askew & Co.," and drew and sent through bank a draft on Askew & Co., with bill of lading attached, in accordance with our Civil Code, §3554.  After the arrival of the corn at Newnan, the plaintiffs paid the draft and received the duly indorsed bill of lading, and the car of corn was delivered to them, but it was found that 22,306 pounds of the corn had been lost in transit.  The contract rate of freight was 14 cents per cwt., and the railway company demanded and collected 16 cents per cwt., an overcharge of 2 cents per cwt., both as to the corn delivered and as to that which was short.  The delivery at Newnan was made through another carrier, the Atlanta & West Point Railroad Com-pany.  The plaintiff sued for the value of the lost corn and the

overcharge in freight. The petition was dismissed on oral motion upon the ground that it set forth no cause of action.

1. The specific point urged as to why the petition sets forth no cause of action, is that the corn having become lost before the plaintiff became the owner thereof by securing the bill of lading, the right of action is in the consignor, and not in the consignee. Viewed solely as a tort, this might be correct; however, the failure to deliver the corn in accordance with the contract of carriage may be treated simply as a breach of the contract of carriage. Under the Civil Code, § 3072, "personalty to which the owner has a right of possession in the future, or a right of immediate possession, wrongfully withheld, is termed by the law a chose in action." Under the Civil Code, § 3077, "all choses in action arising upon contract may be assigned so as to vest the title in the assignee." Since a cause of action arising in tort is not usually assignable, and since, at common law, ordinarily, causes of action originating ex contractu were not, many decisions in other States and text-book citations may be found to the effect that only the consignor may sue where the goods are lost by the carrier before the consignee's title or substantial interest in the subject-matter of the shipment arises. Under the sections of the code cited above, we think that upon the transfer to the plaintiffs of the bill of lading calling for the full quantity of corn, there was assigned to them the right of action for the defendant's loss or conversion of a part of it. When Askew & Co. became the owners of the bill of lading, they became the owners of all the corn, wherever it might be, whether in the car or out of the car (*Joiner* v. *Stallings,* 127 *Ga.* 203, 56 S. E. Rep. 304) ; and if the defendant retained possession, custody, or control over a portion of it, by failing to deliver it on demand, or if the defendant broke its contract of carriage, as embodied in the bill of lading, by failing to deliver the corn to them or to the connecting carrier for them, the right to sue was complete in them. *Reed* v. *Janes,* 84 *Ga.* 390.

Chief Justice Simmons, in the case of *Am. Nat. Bk.* v. *Ga. R. Co.,* 96 *Ga.* 668, says: "A very large proportion of the business of the country is founded upon transfers of bills of lading; and if the transferee were required at his peril to ascertain from the carrier whether the representations made in the bill of lading are true or not, it would practically put an end to this class of transactions."

In the same case he also quotes approvingly from the case of McNeal v. Hill, Woolworth's U. S. Circuit Reports, 96, as follows: "A more modern, but still not recent invention of like character, for the transfer, without the cumbersome and often impossible operations of actual delivery of articles of personal property, is the indorsement or assignment of bills of lading and warehouse receipts. Instruments of this kind are sui generis. From long use .and trade they have come to have among commercial men a well-understood meaning, and the indorsement or assignment of them as absolutely transfers the general property of the goods and chattels therein named as would a bill of sale. . . If the warehouseman gives to the party who holds such receipt a false credit, he will not be suffered to contradict his statement which he has made in the receipt, so as to injure a party who has been misled by it." The plaintiffs' action is good whether it be regarded as a suit by them as transferees of the cause of action ex contractu which would have inured to the original shippers, or by them as the actual owners on an implied assumpsit arising from the defendant's conversion by not delivering the goods to them on demand after they acquired the title through the bill of lading. "Even an action of tort may be maintained by the purchaser of personal property not in the possession of the seller at the time of the sale." Reed v. Janes, 84 Ga. 390. "The unlawful taking or conversion of personal property gives the wrong-doer no title. The title remains in the original owner or his assigns until judgment or satisfaction for the tort." Hall v. Robinson, 2 Comst. (N. Y.) 293. In Robinson v. Weeks, 6 How. Prac. (N. Y.) 161, it is held that the right of action for a chattel wrongfully converted may be assigned. We are not to be understood as holding that a right of action arising on account of a tort to property may or may not be assigned; that question is not before us.

2. It was insisted by the defendant in error that the case should have been dismissed in the court below, because no jurisdiction was shown, and because the suit should have been brought in Coweta county, in which the city of Newnan is located. The allegations of the petition are very indefinite and meager in this respect. The petition does allege enough, however, to show that the car of corn was not delivered by the defendant at Newnan, but that they effected this delivery through the Atlanta & West Point R. Co. as

connecting carrier. Following the precedent of *Watson* v. *R. & D. R. Co.,* 91 *Ga.* 226, we take judicial cognizance of the fact that the Southern Railway Company is a foreign railway corporation operating lines partly in this State and partly in other States, and that it has a line extending from Chattanooga, Tennessee, to Atlanta, Georgia, but not to Newnan, Georgia; also that the Atlanta & West Point R. Co. has a line of railway between Atlanta and Newnan, and that it has no other point of contact with the Southern Railway except in Atlanta, or in Fulton county, in which Atlanta is situated. Under the bill of lading the defendant undertook to deliver to the connecting carrier all the corn specified, and therefore, since Atlanta is the place where that duty was to be performed, the breach of the contract is to be regarded as occurring in that city. *Friedman* v. *Seaboard Air-Line Railway,* 124 *Ga.* 472. The courts of Fulton County, therefore, had jurisdiction of the action. *Coakley* v. *Southern Ry. Co.,* 120 *Ga.* 960.

3. In what we have said above we have given the plaintiff the benefit of the theory that he was proceeding as upon a cause of action ex contractu. We do this because in some of its phases the petition is subject to such a construction, and the motion to dismiss was general and went to the whole petition. The court did not pass upon the special demurrers. The petition is, however, to use an expression from Chief Justice Bleckley, (91 *Ga.* 226) "in many respects lamentably meager and deficient." It sets up in the same count inconsistent statements of fact, and declares upon the same cause of action as a tort as well as a contract, and is otherwise vague, indefinite, and uncertain. Since we are sustaining the action only so far as it sounds in contract, it follows that all allegations appropriate only to a suit in tort are mere surplusage and should be stricken. It is not in the interest of justice, nor in keeping with public policy, that plaintiffs should be allowed to proceed to trial with the pleadings in such shape as they are in this case. Fearing that the defendant may be regarded as having waived the special demurrers filed in the case, exercising the powers conferred on this court by the Civil Code, §5498 (2), we direct that the trial judge require the plaintiff to strike from his petition the allegations germane only to an action in tort, and that it be otherwise amended so as to make it appear that the plaintiff is proceeding either as transferee for Horne & Goans for a

breach of the contract of shipment, or in his own right as owner of the goods upon the implied assumpsit arising from the defendant's keeping the remainder of the corn and not delivering it on demand, or in both of these capacities if the petition be divided into separate counts for that purpose; and that upon the plaintiff's failing or refusing to do this his action be dismissed, without prejudice. The allegations as to the overcharge of freight show no cause of action originating in Fulton county. In fact we infer from the petition that the overcharge was collected by the Atlanta & West Point Railroad Company, and not by the defendant, since the transaction occurred at Newnan; hence we direct that the allegations as to the overcharge of freight be stricken also.

*Judgment reversed, with direction.*