8302.   ATLANTIC COAST LINE RAILROAD COMPANY *v.*
LUKE & FLEMING.

When the agent of a railroad company receives for shipment a number of bales of cotton, weighs them, and inserts in the bill of lading the number of bales and their total weight, and the number of pounds inserted is in excess of the actual weight, and the shipper attaches to the bill of lading a draft, which is paid by an innocent transferee, the railroad is bound by the error of its agent, unless the amount erroneously inserted in the bill of lading is so very large that the error would be apparent upon its face.

The demurrer was properly overruled on all the grounds thereof.

DECIDED AUGUST 3, 1917.

Action for damages; from Richmond superior court—Judge Henry C. Hammond.   December 13, 1915.

*William K. Miller,* for plaintiff in error.

*Callaway & Howard,* contra.

BLOODWORTH, J.   The court did not err in overruling the demurrer on each of the grounds thereof.   As the plaintiff in error specially urges that because the railroad delivered to the assignees of the bill of lading "all and the very same cotton it received from the shipper," it should be relieved of liability, especially as the bill of lading had in it the words, "Weight subject to correction," and "it was only quasi-negotiable, that is, assignable as to the property itself, not as to the quality of the goods," we will discuss this proposition only.   A bill of lading is not strictly a negotiable instrument, but rather a symbol or representative of the goods themselves.   Section 4134 of the Civil Code of 1910 is as follows: "When a bill of lading is attached to a draft drawn on a third person, it will be treated as security for the draft, and neither title to the goods, nor right to the bill of lading, will pass to the drawee until, as required therein, he accepts, or accepts and secures, or pays the draft as the case may be."   In the case of *American National Bank* v. *Georgia Railroad Co.,* 96 *Ga.* 665 (23 S. E. 898, 51 Am. St. R. 155), Chief Justice Simmons said: "The law seems to be, that where an agent has authority to issue bills of lading and does issue one with certain representations contained therein, and the bill of lading is negotiated to an innocent third person, the railroad company, as between itself and such third person, is estopped to deny the representations made in the bill of lading. Under these decisions it is immaterial that the bill of lading is not

negotiable in the strict sense of the term. A representation in a non-negotiable chose in action, when acted upon, is, according to the usual rule applied in cases of estoppel, held to be equivalent in all respects to one made in the case of a negotiable paper. Some of the decisions referred to are also put upon the ground that where one of two innocent parties must suffer from the wrongful act of a third party, the law casts the burden of loss upon him by whose act, omission, or negligence such third party was enabled to commit the wrong which occasioned the loss. The superior equity is with the bona fide assignee who has parted with his money upon the faith of the recitals contained in the bill of lading. 2 Am. & Eng. Enc. of Law, Bill of Lading, p. 227, and cases cited: Bank of Batavia v. Railroad Co., 106 N. Y. 195 [12 N. E. 433, 60 Am. R. 440]; Howard v. Tucker, 1 Barn & Adol. 713; Armour v. Michigan Central R. Co., 65 N. Y. 114 [22 Am. Rep. 603]; St. Louis R. Co. v. Larned, 103 Ill. 293; Brooke v. R. Co., 108 Pa. St. 529 [56 Am. Rep. 235]; Wichita Savings Bank v. R. Co., 20 Kan. 519; Sioux City R. Co. v. First Nat'l Bank, 10 Neb. 556 [7 N. W. 311, 35 Am. Rep. 488]; Coventry v. Great Eastern Ry. Co., 11 Q. B. Div. 776; Abbott's Law of Merchant Shipping (13th Lond. ed.), p. 565, and cases cited. A very large proportion of the business of the country is founded upon transfers of bills of lading; and if the transferee were required at his peril to ascertain from the carrier whether the representations made in the bill of lading are true or not; it would practically put an end to this class of transactions. The better and safer rule is, to hold that the carrier who issues the bills of lading is bound by the representations of his agents. Mr. Justice Miller, in discussing this subject in the case of McNeal v. Hill, Woolworth's U. S. Circuit Reports, p. 96 [Fed. Cas. 8914], says: 'As civilization has advanced and commerce extended, new and artificial modes of doing business have superseded the exchanges by barter and otherwise which prevail while society is in its earlier and simpler stages. The invention of the bill of exchange is a familiar illustration of this fact. A more modern, but still not recent invention of like character, for the transfer, without the cumbersome and often impossible operations of actual delivery or articles of personal property, is the indorsement or assignment of bills of lading and warehouse receipts. Instruments of this kind are sui generis.

From long use and trade they have come to have among commercial men a well understood meaning, and the indorsement or assignment of them as absolutely transfers the general property of the goods and chattels therein named as would a bill of sale, . . . If the warehouseman gives to the party who holds such receipt a false credit, he will not be suffered to contradict his statement which he has made in the receipt, so as to injure a party who has been misled by it.' Horton, C. J., in the case of Wichita Savings Bank v. Railroad Co., supra, says: 'Where one advances money on a bill of lading or buys the property therein set forth, by taking a transfer of such instrument absolutely, the only evidence which he has of the quantity of goods which he has bought or advanced money on may be the statement contained in the bill of lading. Indeed, one of the main uses of bills of lading of grain, at this day, is to afford shippers opportunity to obtain advances upon their shipments when they may and probably will be used with commission merchants, or at some bank, to obtain advances of money. In the most of cases this result is almost certain to follow.'" See also *Askew* v. *Southern Railway Co.*, 1 *Ga. App.* 80, 81 (58 S. E. 242).

In the case of *L. & N. R. Co.* v. *Pferdmenges*, 8 *Ga. App.* 83 (68 S. E. 617), Chief Judge Hill said: "The plea seeking to contradict the bill of lading as to the number of bales of cotton that had been delivered to the railroad company was properly stricken. The plaintiffs were the assignees or transferees for value of this bill of lading, and had the right to sue on it. *Askew* v. *Sou. Ry. Co.*, 1 *Ga. App.* 79 (58 S. E. 242). While a bill of lading is in some sense a receipt and open to dispute between the parties, yet, when it is intended for negotiation, its recitals, in the hands of a bona fide transferee for value, operate as an estoppel against the carrier. The bill of lading in this case was issued by the railroad company with the intent that it should be negotiated. The purchasers of the cotton bought on the faith of the declaration of the railroad company that it had received 100 bales of cotton. If this statement was not true, the company might have some remedy against the shipper, but this does not relieve it from liability to the assignees of the bill of lading. It is a universal rule that carriers can not contradict the recitals contained in their bills of lading as to the delivery of goods, their description, quantity, or

condition, as against the rights of bona fide transferees for value. *Bank of Sparta* v. *Butts,* 4 *Ga. App.* 308 (61 S. E. 298) ; *King v. The Lady Franklin,* 8 Wall. 325 (19 L. ed. 456, and cases in note)." It is contended, however, that the rule that a carrier can not, as against a bona fide transferee for value, contradict bill of lading recitals as to quantity, etc., does not apply here, because in this case the bill of lading had in it the words, "Weight subject to correction," and that this was sufficient to put the assignees of the bill of lading on notice that the weight stated was probably not correct. As between the shipper and the railroad company this would be a correct principle, but under the particular circumstances of this case we do not think it applicable. See *Dickerson* v. *Seelye,* 12 Barb. (N. Y.) 99. The petition shows that the agent of the defendant made the error in inserting the amount in the bill of lading, and, so far as the record shows, the shipper had nothing to do with weighing the cotton or with preparing the bill of lading. These words, "Weight subject to correction," evidently are intended to apply where the shipper furnishes the weights, and they are inserted for the protection of the carrier against error in the weight furnished by the shipper. In the case of *Tibbits* v. *R. I. & P. R. Co.,* 49 Ill. App. 567, it appears that the shipper delivered to the carrier a quantity of corn for shipment. It was weighed by the weighmaster of the board of trade, properly sealed, and shipped to its destination. The shipper filled out a blank bill of lading, inserting the weight as given by the weighmaster, and the defendant's agent signed it. The bill of lading was then forwarded by the shipper to the plaintiff, and a draft was drawn on the plaintiff for the price of the corn according to the weight stated in the bill of lading, but, on opening the car, a shortage of 14,336 pounds of corn was found. The bill of lading contained a column at the top of which were the words, "Weight subject to correction," and under this the weight of the corn was set down. It was held that the plaintiff, the consignee, had a right to recover on account of the shortage against the carrier.

In the case of *Nashville, C. & St. L. Ry.* v. *Flournoy,* 139 *Ga.* 582 (77 S. E. 797), it was held: "1. When a carrier issues a bill of lading containing a statement as to the quantity of goods received, with the understanding that the goods may be transferred by means of a transfer of the bill of lading, the transferee is justi-

fied in relying upon the representation of the carrier, made in the bill, with reference to the quantity of goods received under it; and as to one who receives the bill in good faith, the carrier will be estopped from showing that, though he received some of the goods, he has not received the quantity recited in the bill." "2. To guard against such estoppel the carrier may insert in the bill of lading, 'shippers load and count,' or some like clause qualifying his representation; and in that event he will not be liable to an assignee for value if he delivers all the goods received." It will be noted that this qualification in paragraph 2 of the decision refers to the shipper, and not to the agent of the railroad; and this differentiates the instant case from the rule stated in that paragraph. In the case of *Illinois Central Railroad Co.* v. *Doughty,* 10 *Ga. App.* 317 (73 S. E. 541), the bill of lading described the property shipped as "100 bales of cotton weighing 51,990 pounds, marked 'Payk.'" This bill of lading was transferred to the plaintiff, Doughty, who took it as a bona fide holder for value and demanded 100 bales of cotton of the above weight and marking. The carrier was unable to find any such cotton, but tendered 100 bales marked "Park" and of some two hundred pounds less weight. The court said: "The bill of lading was conclusive upon the company, both as to the number of bales and as to the weight, and, so far as these things tended to fix value, bound the company to deliver to the bona fide holder of the bill of lading cotton of that value. . . Under the law as applied to this bill of lading, the carrier should have been held liable for the deficiency in weight."

The description of the cotton in the bill of lading in the instant case was 119 bales weighing 61,703 pounds. It will thus be seen that the number of bales was but a part of the description of the property received by the railroad. It is a well-known fact that cotton is sold by the pound and not by the bale, and when the agent of the defendant incorporated the number of pounds in the bill of lading, he should have been accurate. Every common carrier owes it as a duty to the purchasers of goods, bought on the faith of the carrier's statement as to weights in the bills of lading, that they speak the exact truth. When the agent of a railroad company weighs cotton to be shipped, and states a total number of pounds in excess of what is the real weight, this is the neglect of the railroad company, and the company, and not an innocent party,

should suffer from the neglect. "The reasons for this view are mainly, that the question is not one of negotiability of the instrument but one of estoppel in pais, that the carrier has clothed the agent with apparent authority to issue a bill of lading, that the agent having done so with full knowledge or full opportunity to know what, if any, goods are intended for shipment, the principal should be estopped to deny the truth of the recitals as to goods covered thereby, that it is better to cast the loss upon the carrier whose agent made the false representation than upon an innocent holder of the bill of lading who relied upon the representation, that while not strictly negotiable a bill of lading is quasi-negotiable, symbolizing the property described therein, and that the title thereto passes by its transfer or delivery, and that it is in the highest degree important to the large commerce, known by the carrier to be built upon the transfer of bills of lading, that there should be confidence in their recitals." Thomas *v.* Railroad Co., 85 S. C. 540, 541 (64 S. E. 220, 67 S. E. 908, 34 L. R. A. (N. S.) 1177, 21 Ann. Cas. 223).

If the amount erroneously inserted in the bill of lading by the agent was so very large that the error would be apparent upon its face, this might be sufficient to put the transferee of the bill of lading on notice.

*Judgment affirmed. Broyles, P. J., and Jenkins, J., concur.*