JENNINGS v. CLYDE S. S. CO.

(Supreme Court, Appellate Division, First Department. January 19, 1912.)

1. SHIPPING (§ 113*)—CARRIAGE OF GOODS—DELIVERY—NOTICE OF ARRIVAL.

    A carrier by sea is liable for the destruction of goods from nonexempted causes after delivery upon its wharf at destination, but before notice of arrival to the consignee.

    [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 113.*]

2. SHIPPING (§ 141*)—CARRIAGE OF GOODS—DESTRUCTION BY FIRE—BILL OF LADING.

    Under a provision of a bill of lading that, if the property is carried by water over any part of the route, such water carriage shall be subject to the condition that any such carrier shall not be liable for loss resulting from fire, a carrier by sea is not liable for the destruction of the goods by fire not the result of its negligence after delivery upon its wharf, but before delivery or notice to the consignee; the relation of carrier not having terminated.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 497–499; Dec. Dig. § 141.*]

3. SHIPPING (§ 141*)—CARRIAGE OF GOODS—LOSS—CAUSES OF LOSS—"PERILS OF THE SEA"—FIRE.

    Loss of goods by fire upon shipboard is not included within an exception in a bill of lading exempting from liability for loss by perils of the sea.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 497–499; Dec. Dig. § 141.*

    For other definitions, see Words and Phrases, vol. 6, pp. 5295–5302.]

4. SHIPPING (§ 141*)—CARRIAGE OF GOODS—LIABILITY FOR LOSS—"PARTY IN POSSESSION."

    Where the bill of lading provided that any water carrier or "party in possession" shall not be liable for any loss or damage resulting from fire, a carrier is not liable for loss of goods by fire, not occurring from its negligence, while on its wharf, before notice to the consignee, even if it were not then a common carrier as to the goods; it being still a "party in possession."

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 497–499; Dec. Dig. § 141.*]

Submitted controversy by Robert B. Jennings against the Clyde Steamship Company. Judgment for defendant.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Harrington, Bigham & Englar (Henry J. Bigham, of counsel), for plaintiff.

Burlingham, Montgomery & Beecher (Norman B. Beecher, of counsel and Ray Rood Allen, on the brief), for defendant.

CLARKE, J. Defendant, a corporation, is a common carrier engaged in the transportation of merchandise between different ports of the United States. On February 19, 1910, plaintiff's assignor shipped on board the steamship Onondaga, operated by the defendant, then lying at Jacksonville, Fla., bound for the port of Boston, Mass., 203 barrels and 161 sacks of rosin dross to be transported to Boston, and there delivered to the Vera Chemical Company, according to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

terms of the bill of lading.  The vessel arrived and docked at Lewis'
Wharf, the dock of the defendant company, at Boston, on February
25, 1910, and said goods were discharged from said steamship to said
wharf on February 26th.  On Sunday, the 27th, a fire originated on
said wharf which destroyed said goods.  At the time of said fire all
of the goods were in the possession of the defendant.  The said loss
and damage to the said goods was not caused by an act of God, a
public enemy, authority of law, or the act or default of the shipper
or owner, but it was caused solely by the fire, which said fire did not
occur through the negligence of the defendant carrier, its agents or
servants.  The said fire occurred within 48 hours after the arrival of
said steamship in the port of Boston, and no notice of arrival of said
goods was sent or given by said agents prior to the time of the said
fire and damage.  The stipulated damage was $677.83.  Defendant
having refused to pay upon demand, contending that, upon the fore-
going facts and because of the exceptions contained in the bill of lad-
ing, it was not liable, this controversy was submitted.

The bill of lading provides, inter alia, as follows:

"Sec. 1. The carrier or party in possession of any of the property herein
described shall be liable for any loss thereto or damage thereto, except as
hereinafter provided.  No carrier or party in possession of any of the prop-
erty herein described shall be liable for any loss thereof or damage thereto
or delay caused by the act of God, the public enemy, the authority of law,
or the act or default of the shipper or owner.  *  *  *  For loss, damage
or delay caused by fire occurring after forty-eight hours (exclusive of legal
holidays) after notice of the arrival of the property at destination or at
port of export (if intended for export) has been duly sent or given, the car-
rier's liability shall be that of warehouseman only.  *  *  *

"Sec. 5. Property not removed by the party entitled to receive it within
forty-eight hours (exclusive of legal holidays) after notice of its arrival has
been duly sent or given may be kept in car, depot, or place of delivery of
the carrier, or warehouse, subject to a reasonable charge for storage and
to carrier's responsibility as warehouseman only, or may be at the option
of the carrier, removed to and stored in a public or licensed warehouse at
the cost of the owner and there held at the owner's risk and without liability
on the part of the carrier, and subject to a lien for all freight and other
lawful charges, including a reasonable charge for storage.  *  *  *

"Sec. 9.  *  *  *  If all or any part of said property is carried by water
over any part of said route, such water carriage shall be performed subject
to the liabilities, limitations, and exemptions provided by statute and to the
conditions contained in this bill of lading not inconsistent with such statutes
or this section, and subject also to the condition that no such carrier or
party in possession shall be liable for any loss or damage resulting from
fire, or for any loss or damage resulting from the perils of the lakes, sea, or
other waters; or from vermin, leakage, chafing, breakage, heat, frost, wet,
explosion, bursting of boilers, breakage of shafts or any latent defect in
hull, machinery, or appurtenances, whether existing prior to, at the time of,
or after sailing; or unseaworthiness; or from collision, stranding or other
accidents of navigation, or from prolongation of the voyage."

It is clear from the conceded facts that the goods which had been
received by the common carrier for carriage by water and had been
unloaded from the ship upon its own wharf, completely under its
control, were still in its possession.  They had not been delivered ac-
tually or constructively.  No notice had been given of their arrival,
and, of course, 48 hours had not elapsed after such notice, so that
the carrier's liability had not been transformed to that of warehouse-

man only. So that neither the provisions of the first section of the bill of lading nor of the fifth, providing for the change from carrier's to warehouseman's liability after expiration of 48 hours notice, apply.

The question presented is whether the exception of liability for damage resulting from fire provided for in the ninth section, which it is conceded would relieve the defendant from liability if the fire had occurred while the goods were still on board the ship, it being admitted that there was no negligence, applies to the goods on the wharf and still in defendant's possession.

[1] If it were not for the exception noted, it is clear that the defendant would have been liable. In Gotliff v. Brown, 4 Bing. N. C. 314 (s. c. in Ex. Ch. 3 M. & G. 643, and in the House of Lords, 11 Clark & Fin. 45), to a declaration on a contract for the carriage of goods from Dublin to London and a delivery at the port of London to the plaintiff, or his assigns, a plea that, on the arrival of the vessel at London, the goods were deposited on a wharf, there to remain until they could be delivered to the plaintiff, the wharf being a place where goods from Dublin were accustomed to be landed and fit and proper for such purposes, that before a reasonable time for delivery elapsed they were destroyed by fire which broke out by accident, was held bad. In Redmond v. Liverpool & Phila. S. Co., 46 N. Y. 578, 7 Am. Rep. 390, the court said:

"The request to rule that the carrier was exonerated from liability by depositing the goods on the wharf, and before the consignee had time to receive them, was properly refused. A mere deposit of the goods by the defendants on their own wharf, without acceptance by the consignee, not separated and set apart from the residue of the cargo, and without a reasonable opportunity, and time for their removal, did not discharge the defendant, and they remained at the risk of the carrier."

In Tarbell v. Royal Exchange Shipping Co., 110 N. Y. 170, 17 N. E. 721, 6 Am. St. Rep. 350, the court said:

"The general principle that the duty and obligation of a common carrier by water does not ipso facto cease on the unloading of goods from the ship and their deposit upon a wharf, and especially where the place of discharge is also the terminus of the particular voyage, is the settled doctrine of this court, and the generally accepted doctrine of the maritime law. The obligation of the shipowner is not only to carry the goods to the port of destination, but to deliver them there to the consignee. But a delivery which will discharge the carrier may be constructive, and not actual. To constitute a constructive delivery, the carrier must, if practicable, give notice to the consignee of the arrival, and when this has been done and the goods are discharged in the usual and proper place, and reasonable opportunity afforded to the consignee to remove them, the liability of the carrier, as such, terminates."

In Constable v. National S. S. Co., 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903, the Supreme Court of the United States said:

"It is admitted that, under what may be termed the common law of the sea, a delivery of the cargo to discharge the carrier from his liability must be made upon the usual wharf of the vessel and actual notice be given to the consignee, if he be known. This was the ruling of this court in the case of Richardson v. Goddard, 64 U. S. 28 [16 L. Ed. 412], and Mordecai v. Lindsay (The Eddy) 72 U. S. 481 [18 L. Ed. 486], and is in conformity with the great weight of English and American authority. Hyde v. Trent & M.

Nav. Co., 5 T. R. 389; Gibson v. Culver, 17 Wend. 305, 31 Am. Dec. 297; 1 Parsons, Shipping, 222."

[2] It follows, therefore, it seems to me that the conceded possession of these goods by the defendant upon its wharf within 48 hours after arrival, and before notice to the consignee, was that of a common carrier by water and subject to all the liabilities of such carrier, except as modified by the conditions and exceptions contained in the bill of lading.

[3] Loss by fire upon a ship has never been regarded as coming within the exceptions of the early bills of lading as to perils of the sea, but such liability has been excepted by the terms of the contract from early times. Maclachen in his treatise on Merchant Shipping, published in London in 1911, says:

"The exception of 'fire' is important in relation to the liability of the common carrier, who, without it, is answerable for goods destroyed by that means, though accidentally. Forwards v. Pittard, 1785, 1 T. R. 27; Trent Nav. Co. v. Wood, 1785, 4 Doug. 287. As it is no protection where the loss is due to the fault of the shipowner or his servants, it coincides in part with the statutory exemptions already mentioned, and beyond that extends, of course, to loss or damage to the goods while they are in the shipowner's care, though not on board the ship (a case not within the statutory exemption), provided that there has been no fault on his part or that of his servants."

Pollock on Bill of Lading Exceptions, published in London 1895, at page 35, says:

"The exception of 'fire' protects the shipowner from all loss or damage by fire while the cargo is in his custody under the contract of carriage, unless the fire has been caused by the negligence of himself or his servants."

An interesting case which was decided, as it appears by the report, after five days argument, is that of the Hong Kong & Shanghai Banking Corporation v. Baker, 7 Bombay High Court Repts. 186, decided in 1870. In that case the goods were to be delivered at the port of Bombay, and the bills of lading contained the exception:

"The act of God, the Queen's Enemies, fire and all and every other dangers and accidents of the seas, rivers, and navigation, of whatever nature or kind soever excepted."

In that case the master, according to the custom of the port, had landed the goods on the government custom house pier some 15 days after arrival, and a loss had occurred. Westropp, C. J., said:

"Even assuming that his liability as a common carrier continued, we concur * * * in thinking that the master, having landed the goods according to the custom of the port within a reasonable time after the entry of the vessel, and being free from any imputation of negligence or breach of duty, is protected by the special exception of 'fire' contained in the bills of lading. * * * The use of the word 'other' before dangers and accidents of the seas, etc., in the present bills of lading, cannot, we think, render fire a peril of the sea, or limit it to fire on board the ship. The reasonable mode of construing the contract contained in the bill of lading is that the exceptions are coextensive with the liability. Were we to apply the word 'other' so as to cut down the shipowner's and master's protection against fire to fire occurring on board the ship, we should be equally bound to apply it in the same manner to limit the exception of the acts of God and the Queen's enemies, so that if the goods, even though landed after the expiration of the

15 days contended for by the appellants, were while yet undelivered, to be destroyed by lightning or by a hostile force at war with the Queen, the shipowners and master would be unprotected. This we do not think could have been the intention of the parties. * * * The language of the five bills of lading in this case leads to the conclusion that the exception of fire is coextensive with the contract to deliver, and does not limit the protection to the time during which the goods are in the ship."

In Scott v. Baltimore, etc., Steamboat Co. (C. C.) 19 Fed. 56, where the bills of lading excepted dangers of the sea, fire, etc., and the goods were burned while on the wharf awaiting shipment the court held that the defendant was not liable, saying:

"It is difficult, therefore, to see why, if he stipulates generally for exemptions from losses from fire, he should not be understood to mean exemption while the goods are in his possession preparatory to their being laden, as well as afterwards. In most instances there must be some interval of time between the reception of the goods and their being actually laden on board the vehicle of transportation, and, as the law sanctions contracts by which the carrier exempts himself from risks of fire, it seems to me it would be a very strained and forced construction of these contracts now before me to hold that the exemptions in them from 'fire, leakage and breakage' do not apply to losses from those risks while on the wharf, because they are mentioned in the same sentences with other risks which are only encountered on the voyage itself."

This language was quoted with approval in the case of the Egypt (D. C.) 25 Fed. 320, and the case was cited with approval in Constable v. National Steamship Co., supra, where Mr. Justice Brown said:

"No good reason, however, is perceived why, if a wise policy requires the exemption of the carrier from a fire occurring without his fault, such exemption should not extend to any such fire while the goods are in his possession and under his control, or at any time before actual delivery to the consignee. But, however this may be, there can be no question of the power of the carrier to extend his statutory exemption from fire to such as occur after the discharge of the cargo by special stipulation to that effect in the bill of lading. * * * Indeed, a general exemption from the consequences of fire has been held to extend not only to fires happening on board the vessel, but to fires occurring to the goods while on the wharf awaiting transportation"— citing the Scott Case, supra.

I reach the conclusion that, as the possession of the goods at the time of the fire was that of a common carrier by water and that as its liability for their loss was that of a common carrier, upon principle and authority, the exemption in the bill of lading applied to it as common carrier so long as its liability as such carrier continued.

[4] There is another ground for the exemption, in that in this bill of lading it is provided that "no such carrier or party in possession shall be liable for any loss or damage resulting from fire." If it had ceased pro hac vice to be a common carrier in its relation to these goods, it certainly was a party in possession, so that in no event would the plaintiff be entitled to recover.

It follows that judgment should be directed upon the submission for the defendant, with costs. All concur.