6157. CANBY *v.* MERCHANTS AND MINERS TRANSPOR-
TATION COMPANY.

1. A carrier engaged in interstate commerce by water may by stipulation in a contract of carriage secure exemption from liability for loss resulting from destruction of the shipment by fire, provided the fire is not occasioned by negligence of the carrier, and the destruction of the shipment is not the result of the carrier's negligence after discovery of the fire.

2. In order to support a reasonable stipulation for exemption from liability, in an interstate contract of carriage, it is not essential that there be an independent consideration apart from that expressed in the bill of lading, nor is it necessary that an alternative contract be presented to the shipper for his choice. If the contract contains a lawful provision for exemption, and if it has been shown that the damage resulted from the excepted cause, the burden is on the plaintiff to show that the loss was occasioned by the carrier's own negligence, from which it could not not be exempted.

3. The assignee or transferee of a bill of lading may sue upon any cause of action which is supported by the terms of that contract.

DECIDED MAY 17, 1915.

Action for damages; from city court of Savannah—Judge Davis Freeman. November 10, 1914.

*D. S. Atkinson,* for plaintiff. *Adams & Adams,* for defendant.

RUSSELL, C. J. Canby brought suit against the Merchants and Miners Transportation Company for the value of a shipment of lumber, which it was alleged was destroyed by fire after delivery to the carrier. By demurrer the defendant compelled the plaintiff to file an amendment, by which the bill of lading covering the shipment was set forth and virtually became the groundwork of the action. The bill of lading contained the following clause: "Sec. 9. Except in case of diversion from rail to water route, which is provided for in section 3 hereof, if all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to the liabilities, limitations, and exceptions provided by statute, and to the conditions contained in this bill of lading not inconsistent with such statutes or this section, and subject also to the condition that no such carrier or party in possession shall be liable for any loss or damage resulting from fire, or for any loss or damage resulting from the perils of the lakes, sea, or other waters, or from vermin, leakage, chafing, breakage, heat, frost, wet, explosion, bursting of boilers, breakage of shafts, or any latent defect in hull, machinery, or apparatus,

whether existing prior to, at the time of, or after sailing, or unsea-
worthiness, or from collision, stranding, or other accidents of nav-
igation, or from prolongation of the voyage, etc." The rate charged
was $3.75 per ton. It appears from the petition as amended that
the steamship company published with the interstate-commerce
commission this rate of $3.75 per ton on shipments of lumber from
Savannah, Georgia, to Wilmington, Delaware, with this statement:
"Marine insurance. The rates here shown are not insured," and
with this further explanation: "Marine insurance. Traffic handled
by this company under tariffs that do not include marine insurance
may be insured, at the request of either shippers or consignees,
against marine risk while in possession of this company, subject to
and in accordance with the open policies held by this company, at
the rate of twelve and one-half (12½) cents per one hundred dol-
lars ($100.00) valuation, subject to the minimum premium of ten
(10) cents based on the invoice value of the property." This is
the only rate published and the rate governing this shipment. To
the petition as amended the defendant interposed both special and
general demurrers, and the petition was dismissed by the judgment
sustaining the general demurrer. In view of the ruling as to the
general demurrer, it is not necessary for us to deal with the special
demurrers.

We can not agree with the able and indefatigable counsel for the
plaintiff as to the pertinency of the question whether the fire on
the wharf before the lumber was consigned to the ship as cargo was
a marine risk; nor is there any difference, in our opinion, between
the exemption from liability for fire loss, contained in the bill of
lading, as referable to a loss which marine insurance would cover,
and exemption from liability for loss by fire which marine insur-
ance would not cover. Conceding that the defendant is a common
carrier and liable as an insurer, unless exempted by statute or by
contract, and that the lumber in question, not having been loaded
on board ship nor consigned to any particular ship as cargo, was
not subject to marine insurance and did not fall within the ex-
emption provided by section 4282 of the Revised Statutes of the
United States (U. S. Comp. St. 1913, § 8020) in case of fire on
board ship, still the inquiry as to whether the lumber was a marine
risk or an ordinary fire risk is immaterial, since the plaintiff alleges
that he had delivered the lumber to the defendant for immediate

transportation, and that the defendant had accepted it for that purpose. The bill of lading was issued in pursuance of this delivery to the carrier for immediate transportation. If the stipulation in the contract of affreightment which we have quoted above had been confined to fire on board ship or to loss by fire after the shipment had been assigned to a particular cargo, the fact that the lumber was destroyed on the defendant's wharf might affect the question; but the language employed in the stipulation by which the carrier sought to relieve itself from damage occasioned by fire is general and sweeping, and includes any loss due to a fire after the delivery of the shipment to the carrier and until the carrier has given the notice to the consignee at destination as required by law. The carrier issued the bill of lading "subject to the condition that no such carrier or party in possession shall be liable for any loss or damage resulting from fire," and, as pointed out in Jennings *v.* Clyde Steamship Co., 148 App. Div. 615, 133 N. Y. Supp. 298, 302, by Clarke, J. (whose opinion the Court of Appeals of New York adopted in affirming the judgment,—210 N. Y. 570, 104 N. E. 1132), if the transportation company had not assumed the relation of a common carrier with reference to the lumber, "it certainly was the party in possession."

1-2. The controlling question in the case is whether a carrier engaged in interstate commerce by water can so stipulate in a contract of carriage as to protect itself from liability in case the cargo delivered to it for carriage is destroyed by fire after it has been accepted for shipment. It is to be borne in mind that the usual presumption of negligence applicable to railroads does not extend to carriers engaged in transportation by water. So that a consideration of the presumption of negligence is aside from the question here presented. If the defendant had been charged with the loss of goods delivered for intrastate shipment (since it could not defend against proof of loss of the goods in its custody except by showing that the loss was due to the act of God or the public enemy), proof of the loss would shift upon the defendant carrier the burden of showing that it had not been guilty of negligence. However, the petition shows that an interstate shipment is involved, and in our opinion the rule as to the burden of proof in interstate shipments differs from that which has just been stated to be applicable to intrastate shipments. It is conceded, and must be conceded, that

since the passage of the Carmack amendment to the Hepburn act (34 Stat. 595, U. S. Comp. St. 1913, § 8592) the Federal regulations are paramount and controlling. Adams Express Co. *v.* Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257). The Federal regulations superseded State statutes and decisions upon the question of liability under a bill of lading covering interstate shipments. To use the language of Mr. Justice Lurton, in the Croninger case, supra, "Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all State legislation with reference to it." As was said by Judge Pottle, speaking for this court, in *A. C. L. R. Co.* v. *Thomasville Live Stock Co.,* 13 *Ga. App.* 102-108 (78 S. E. 1019), "The Federal act and decisions of the Supreme Court of the United States construing it are binding upon the State courts, without reference to the carrier who may be proceeded against for any damage which may have been sustained." It is true that the precise ruling in Adams Express Co. *v.* Croninger, supra, was confined to a holding that while, under the provisions of the act of Congress, the carrier could not exempt himself from negligence, still he might by a fair and reasonable valuation limit the amount recoverable by the shipper to an agreed valuation for the purpose of reducing the rate of freight. And it is insisted by counsel for the plaintiff that the instant case does not fall under the ruling in Adams Express Co. *v.* Croninger, for the reason that the shipper in this instance had only one rate of freight offered to him, that there was only one rate prescribed by the interstate-commerce commission, and that therefore the exemption from liability sought under the provisions of paragraph 9 of the contract of affreightment is without consideration. As to this, just as in relation to the burden of proof, there is a difference between the rulings of the State courts and the Federal decisions. However, under the explicit provisions of our constitution, statutes of the United States take precedence over ours; and the construction placed upon these statutes by the Supreme Court of the United States must be controlling, and we must be governed by the adjudications of that tribunal.

The precise point now before us seems to have been decided in Cau *v.* Texas & Pacific Ry. Co., 194 U. S. 427 (24 Sup. Ct. 663, 48 L. ed. 1053). It is true that the Cau case was decided prior to

the Hepburn act, but it was approved and followed in Arthur *v.* Texas & Pacific Ry. Co., 204 U. S. 505 (27 Sup. Ct. 338, 51 L. ed. 590), which was decided after the Carmack amendment to the Hepburn act, and consequently the similarity of the facts in the Cau case and the case at bar (considered in connection with the principles announced in Arthur's case, supra), evidences that the rule announced in Arthur's case was considered by the Supreme Court of the United States as applicable to just such a state of facts as that set out in the petition now before us. The 9th section of the bill of lading under which the shipment in the present case was made provides that the shipment is accepted, "subject also to the condition that no such carrier or party in possession shall be liable for any loss or damage resulting from fire." In Cau's case the suit was against a railway company for the loss of cotton destroyed by fire. The cotton had been delivered to the railroad (as the lumber in the present case was delivered to the ship) as a common carrier, and was in the possession of the compress company, but in the custody of the railroad company, at the time of the fire. The bill of lading contained an exemption from liability for loss caused by fire. There was but one rate of freight. The ruling of the Supreme Court of the United States, as stated in the headnote of the decision, was as follows: "While primarily the responsibility of a common carrier is that expressed by the common law, and the shipper may insist upon such responsibility, he may consent to a limitation of it, and so long as there is no stipulation for an exemption which is not just and reasonable in the eyes of the law, the responsibility may be modified by contract. It is not necessary that an alternative contract be presented to the shipper for his choice. A bill of lading is a contract, and knowledge of its contents by the shipper will be presumed, and a provision therein against liability for damages by fire is not unjust or unreasonable. It is not necessary that there be an independent consideration apart from that expressed in the bill of lading to support a reasonable stipulation of exemption from liability. While the burden may be on the carrier to show that the damage resulted from the excepted cause, after that has been shown the burden is on the plaintiff to show that it occurred by the carrier's own negligence from which it could not be exempted."

As we have already said, the rule in Cau *v.* Texas & Pacific Ry. Co., supra, as to the binding effect of agreements in bills of lading exempting carriers from fire loss was followed in Arthur *v.* Texas & Pacific Ry. Co., supra, although in the latter case there was a claim that the agreement was forced upon the shipper by duress and *without consideration.* Mr. Justice Peckham, in delivering the opinion of the court, does not so much as discuss the court's ruling upon this point, and contents himself with remarking merely that the contention that there was no consideration for the third clause of the bill of lading (which was practically the same as that in the bill of lading now before us) and that the shipper accepted it under duress, was answered and overruled in the case of Cau *v.* Texas & Pacific Ry. Co., supra, and it need not be further discussed. The court further held that, with the fire clause in force, it became necessary for the plaintiffs to show that the defendant had received the cotton, and that it was destroyed through negligence of the defendant or its agents, as the exemption would not apply to a case of loss occurring through such negligence. It is to be noted that in the case at bar there was no allegation that the fire and the consequent loss of the lumber were due to any negligence on the part of the defendant. It is true there is an allegation that the defendant was negligent in not loading the lumber upon one of its ships which cleared the port before the fire, but (doubtless for the reason that there is a stipulation in the contract which permitted the carrier to select the ship upon which it would load the lumber), this allegation of negligence is not insisted upon.

In our opinion, the inclusion of the exemption from liability for loss in case of fire, in the contract of affreightment which was accepted by the shipper, presents an insuperable obstacle to any recovery on the part of the plaintiff, and for that reason the trial judge correctly sustained the general demurrer to the petition. It matters not that there was no alternative contract which could be presented to the shipper, and that he did not sign the contract in question in order to obtain the benefit of a lower rate of freight. The carrier could not have offered any lower rate of freight than that prescribed by the rule filed with the interstate-commerce commission without subjecting itself to the penalties provided by law. But the shipper, in entering into the contract, knew that insurance upon the shipment was expressly excluded, and voluntarily entered

into the contract with that knowledge, although there was filed, with the rate for transportation, a price or rate at which insurance might be obtained. In other words, the shipper had the option to ship at the rate approved by the interstate-commerce commission without insurance, or, by paying for insurance, to ship it at that rate with the shipment insured, and he preferred to take the risk himself. The very cheapness of the rate may have been of itself sufficient to have supplied consideration for the exemption which was agreed to by the shipper. In other words, the rate may have been so cheap that the shipper may have considered that he could afford to carry his own insurance, as is often done by owners of other property.

3. We take it to be well settled that the consignee in a bill of lading is the proper party to maintain an action arising upon a breach of the contract of carriage, and the lower court would have been authorized to sustain the general demurrer in this case, for the reason that the shipment was consigned to the order of Heard Lumber Company, with direction to "notify Henry M. Canby," if nothing more than this had appeared. *Raleigh & Gaston R. Co.* v. *Lowe,* 101 *Ga.* 331 (28 S. E. 867). However, the insistence of counsel for the defendant upon this point can not be sustained, and the merit of the judgment of the trial court must rest entirely upon the exempting condition of the contract which we have already considered, since an inspection of the record discloses that the bill of lading was endorsed in blank by "Heard Lumber Company, by C. W. March, attorney." "The transferee of a bill of lading may maintain an action ex contractu against the carrier for failure to deliver to him all or any portion of the goods specified in the bill of lading; and this is true whether the loss of the goods or the shortage occurred before or after he acquired title to the bill of lading." *Askew* v. *Southern Railway Co.,* 1 *Ga. App.* 79 (58 S. E. 242).

The court did not err in sustaining the general demurrer, because the stipulation in the contract relative to fire expressly relieved the carrier from liability for loss occasioned by fire; and it is not affirmatively alleged in the petition that the fire or the consequent destruction of the shipment directly resulted from that negligence on the part of the carrier (either in causing the fire in the first instance, or in omitting proper efforts to save the shipment after the fire was discovered) from the results of which the law will not permit a carrier to exempt itself by contract.

*Judgment affirmed.*